STATE, USE OF THE JUSTICES OF THE LEVY COURT OF BALTIMORE COUNTY, *vs.* JOHN H. DORSEY, *et al.* *December*, 1830.

The Levy Court of *Baltimore* county, having omitted to make the levy for the year 1823, between the 1st of March and 31st of December of that year, as they were bound to do by the act of 1817, ch. 22, were authorised by the act of 1823, ch. 23, to "make and close the levy for the year 1823, on or before the 1st of March, 1824." HELD, that as the collectors of the levy were not to be appointed before the assessment was made, the act of 1823 carried with it an extension of the time for appointing those officers; or if it did not, their appointment under the act of 1817 was not restricted, as the laying of the levy was, to the 31st December of the year for which the tax was levied.

The Levy Court being a corporation, had power to accept and approve the bond of a collector appointed to collect the levy, authorised by the act of 1823, though not executed and filed with them until the 2d of March, 1824.

When a suit is brought on a private bond, &c. for the use of an individual, such person is not the legal plaintiff. The use is only entered for the protection of his equitable interest. If the c. q. u. dies pending the suit, his death is not the subject of a plea; nor is there for the purposes of the suit, any necessity for suggesting his death. The suit goes on as if he was still living or the use had never been entered. There is no reason why in the case of a public bond, with the privilege secured to any person interested to bring suit upon it, there should be any difference.

So where a Levy Court was abolished pending a suit brought in the name of the State, for the use of such Levy Court, against the obligors in a collector's bond, it was held, that a plea in abatement *puis darrein continuance*, that the Levy Court had been extinguished, was no objection to the further prosecution of the action.

In an action of debt on a bond with a collateral condition, where the defendant has pleaded general performance, and the plaintiff replied assigning a breach of the condition, it is a departure for the defendant to allege in his rejoinder, matter which shows the bond never had any legal existence.

It is a sufficient breach of the condition of a collector's bond, taken in pursuance of the acts of 1794, ch. 53, and 1817, ch. 142, that the collector did not finish and complete the collections of the assessment or rate imposed, &c. placed in his hands and accepted by him for collection, within one year and six months after the delivery to him of the copy of the account of assessment, and list of taxables required to be delivered to each collector.

The design of the act of 1815, ch. 173, allowing to collectors, one year after the expiration of the time for which they are appointed, to collect balances due them, was only to give them further time for their own benefit, to

collect what they had neglected to collect in due time, in the same manner in which they might have made the collections, within the time prescribed.

Cross APPEALS from *Baltimore* County Court.

This was an action of *Debt* brought in the name of *The State of Maryland*, for the use of the Justices of the Levy Court of *Baltimore* county, on the 14th of March, 1826, against the appellees, *John H. Dorsey, Nicholas Dorsey, Frederick Grapevine*, and *Leonard Pouder*, on a bond to the State of *Maryland*, dated and approved on the 2d of March, 1824, in the penalty of $15,499, with the following condition. "Whereas the said *John H. Dorsey* hath been appointed by the Justices of the Levy Court for *Baltimore* county, one of the collectors of the county tax for the city of *Baltimore*, for the year 1823, within the 9th, 10th, 11th and 12th wards of the said city; the condition of the above obligation is such, that if the above bound *John H. Dorsey*, shall faithfully discharge his duties as such collector for the 9th, 10th, 11th and 12th wards within the said city, then the above obligation to be void, else be and remain in full force, &c."

The defendants pleaded, 1st, general performance.

2d. That the said State, its, &c. because they say, that the justices of the Levy Court of *Baltimore* county did not, at any time during the year 1823, appoint the said *John H. Dorsey*, collector of the tax mentioned in the condition of the said writing obligatory; and the said defendants further say, that on the 19th day of February, in the year 1824, the following order was passed by the justices of the Levy Court of *Baltimore* county. "We, the subscribers, justices of the Levy Court for *Baltimore* county, have this day assessed and taxed the assessable property of the city and county of *Baltimore* for the year 1823, and apportioned the same agreeably to the aforegoing levy list; and for the collection of the same, have appointed the following persons, viz. for the late first election district of the said county, now called collection district number one, we have

appointed, &c.; and for the city of *Baltimore*, we have appointed the following persons, viz: For the first, &c. and for the ninth, tenth, eleventh and twelfth wards of the said city, we have appointed *John H. Dorsey.* And the said several collectors, on entering into bond, according to the act of assembly, are hereby authorised and empowered to collect and receive from the owners of property assessed in the aforesaid districts and wards, the following rate or assessment, that is to say, on all the property assessed in the aforementioned several districts in the said county, the rate or sum of one dollar and ten cents on every hundred dollars, so as aforesaid assessed; and on all property assessed in the aforementioned wards in the said city, the sum or rate of sixty-three cents on every hundred dollars, so as aforesaid assessed; and the said several collectors are hereby authorised and required, if need be, to execute therefor, and pay the same over as the justices of the Levy Court of *Baltimore* county shall, from time to time direct. Given under our hands and seals, this 19th day of February, in the year of our Lord 1824." And that, after the passage of the said order, and on the second day of March next following, the said writing obligatory was executed and delivered to the said justices, and by them then approved and accepted, to wit, at the county aforesaid ; and this the said defendants are ready to verify. Wherefore they pray judgment.

3d. "And the said defendants, further defend, &c. and say, that the said State, its, &c. because they say, that since the commencement of this present term of *Baltimore* County Court, and prior to filing this plea, the justices of the Levy Court of *Baltimore* county, for whose use the said action of debt was instituted, as a court, have ceased to exist, and that no successors have been appointed to the said court hitherto; and this they are ready to verify, wherefore they pray judgment, if the State, &c.

4th. "And the said defendants, further defend, &c. and say, that the said State, its, &c. because they say, that after

the commencement of this present term of *Baltimore* County Court, and prior to the time of filing this plea, a body politic and corporate, by the name and style of the commissioners of *Baltimore* county, was duly created and established; the several individuals comprising the same, between the days and times aforesaid, having been duly elected such commissioners; and having also taken and subscribed, before a competent authority, the oath required by law, of each of such commissioners; and the said defendants do further say, that after such election and qualification of the several commissioners of *Baltimore* county, and prior to the time of filing this plea, *the Mayor and City Council of Baltimore* did duly and legally provide and enact, that the collectors of the aforesaid county tax, of which the said *John H. Dorsey* was one, should pay to the register of the city of *Baltimore*, all such sums of money as they, the said collectors, had received from the taxes imposed by the authority of the Levy Court of *Baltimore* county; and so the said defendants say, that the right of action of the said justices of the Levy Court of *Baltimore* county, on the bond declared on in this suit, if any, since the institution of this suit, has been extinguished, and this, &c.

To the *second*, *third* and *fourth* pleas, the plaintiff demurred generally, and the defendants joined in demurrer.

To the 1*st plea* the State replied as follows; viz: that the plaintiff ought not to be barred, &c. because the said plaintiff says, that after the making of the said writing obligatory, and before the commencement of this suit, to wit, on the third day of March, in the year 1824, at the county aforesaid, the justices of the Levy Court of *Batimore* county aforesaid, directed and caused the clerk of *Baltimore* County Court, to deliver to, and place in the hands of the said *John H. Dorsey,* as one of the collectors of the county tax for the city of *Baltimore*, for the year 1823, within the ninth, tenth, eleventh and twelfth wards of the said city, in the said condition of the said writing obligatory men-

tioned, a fair copy of the fair and accurate account kept by the said clerk of the assessment or rate imposed and levied by the said Levy Court, as by law directed and authorised, on the assessable property within the said wards of the city of *Baltimore*, as a county tax for the year 1823, and an alphabetical list of the names of the persons who then were owners of the said assessed property, in each of the said wards, and liable as well as the said property for the payment of the said assessment or rate, so imposed and levied thereon, with the amount of each of the said person's assessment or proportion of the said county tax annexed, to be collected, paid and accounted for, by the said *John H. Dorsey*, as such collector aforesaid, within the time, and in the manner prescribed by law; and the said *John H. Dorsey*, as such collector aforesaid, mentioned in the said condition of the said writing obligatory, then and there received and accepted the said copy of the account of assessment and lists of the persons and amounts assessed for collection, and to be paid and accounted for as aforesaid. And the said plaintiff avers, that the whole amount of the county tax for the year 1823, so levied and imposed on the assessable property within the said wards of the city of *Baltimore*, as specified in the said copy of the account of assessment and lists, so delivered to, and accepted by the said *John H. Dorsey*, as such collector aforesaid, including the commission of six per cent. allowed to him for the collection thereof, was and is, a large sum of money, to wit, the sum of $7972 17, to wit, at the county aforesaid. And the said plaintiff further says, that the said *John H. Dorsey*, as such collector aforesaid, on and by the said delivery to, and receipt by him, of the said copy of the account of assessment and lists aforesaid, so placed in his hands, and accepted by him for collection as aforesaid, was duly and lawfully authorised, and it became and was his duty, as by law prescribed and required, within twenty days thereafter, to wit, at the county aforesaid, to proceed to collect the said assessment or rate, to the amount of the said sum last

above mentioned, as specified in the said copy of the account of assessment and lists so placed in his hands, and by him accepted for collection, and to finish and complete the collections of the same in the several wards aforesaid, within one year and six months after the delivery to and receipt by him, of the said copy of the said assessment and lists; yet the said *John H. Dorsey*, regardless of his duty as such collector aforesaid, did not finish and complete the collections of the assessment or rate so imposed and levied as a county tax for the year 1823, on the assessable property within the said wards of the city of *Baltimore*, and placed in his hands and accepted by him for collection, as such collector aforesaid, within one year and six months after the delivery to and receipt by him, of the said copy of the account of assessment and lists aforesaid; but wholly neglected and refused, although often requested, to finish and complete the collections of the assessments so placed in his hands, and still doth neglect and refuse so to do; and therefore the said plaintiff says that the said *John H. Dorsey* hath not faithfully discharged his duties as one of the collectors of the county tax for the city of *Baltimore*, for the year 1823, within the said wards of the said city, but therein hath wholly failed and made default, contrary, &c. and this, &c.

And for assigning a further breach of the condition of the said writing obligatory, the plaintiff says, that after the making of the said writing obligatory, and after the delivery to, and receipt by *John H. Dorsey*, as such collector aforesaid, of the copy of the amount of assessment, and list of names and amount of county tax to be by him collected, for the year 1823, for the ninth, tenth, eleventh and twelfth wards within the city of *Baltimore*, to wit, at the county aforesaid, it became and was by law the duty of the said *John H. Dorsey*, as such collector, to pay and account for the amount of the sums so by him to be collected, as specified in the said lists, in such manner and at such time as the said Levy Court of *Baltimore* county should direct and appoint.

And the said plaintiff further says, that the said Levy Court, afterwards, to wit, on the 7th of September, 1825, at, &c. did direct and appoint that the said *John H. Dorsey*, should pay and account for the collections of the assessments so placed in his hands as aforesaid, to the justices of the Levy Court of *Baltimore* county aforesaid, on or before the first Tuesday in March next thereafter, to wit, &c. whereof the said *John H. Dorsey*, had notice. And the said plaintiff avers, that the amount of the collections of the assessments of the said county tax for the year 1823, for the said wards which it was the duty of the said *John H. Dorsey*, as collector to have paid to the justices of the Levy Court of *Baltimore* county, on or before the said, &c. was the sum of $7,493 84; yet the said *John H. Dorsey*, regardless of his duty as such collector, did not, on or before the said, &c. pay or account for the collections of the said assessments so placed in his hands, and by him accepted, or any part thereof, to the justices of the Levy Court of *Baltimore* county aforesaid, but the said *John H. Dorsey*, although often requested by the said Levy Court, to wit, &c. hath always hitherto refused, and still doth refuse, to pay or account for the same, or any part thereof; and so the said plaintiff says that the said *John H. Dorsey*, hath not faithfully discharged his duties as one, &c.

To these breaches the defendants rejoined as follows; that as to the *first* breach assigned by the said State in its replication, they say, that the said State, its action, &c. because they say, that the justices of the Levy Court of *Baltimore* county did not at any time during the year 1823, appoint the said *John H. Dorsey* collector of the tax mentioned in the condition of the said writing obligatory. And the defendants further say, that on the 19th day of February, in the year 1824, the following order was passed by the justices of the Levy Court of *Baltimore* county, (setting out the order recited in the 2d plea,) and that after the passage of the said order, and on the 2d day of March next following, the said writing obligatory was executed

and delivered to the said justices, and by them then approved and accepted, to wit, at the county aforesaid; and this the said defendants are ready to verify; wherefore they pray judgment, &c.

And the said defendants, as to the *second* breach assigned by the said plaintiff, say, that the justices of the Levy Court of *Baltimore* county, did not direct and appoint that the said *John H. Dorsey*, as collector aforesaid, should pay and account for the collections and assessments placed in his hands, to the justices of the said Levy Court, on or before the first Tuesday in March, 1826, and that he the said *John H. Dorsey* had not notice of any such direction and appointment; and of this the said defendants put themselves upon the country.

To the defendants' rejoinder to the plaintiff's *first* breach, the plaintiff demurred generally, and the defendant joined in demurrer. An issue was joined upon the rejoinder to the *second* breach assigned by the plaintiff.

The County Court [HANSON, A. J.] sustained the demurrers to the defendants' 3d and 4th pleas, and also the demurrer to the defendants' rejoinder to the *first* breach, assigned in the replication of the plaintiff to the defendants' *first* plea; but overruled the demurrer to the *second* plea, and gave final judgment for the defendants, whereupon both parties appealed to this court.

The cause came on to be argued before BUCHANAN, Ch. J., EARLE, MARTIN, STEPHEN, and DORSEY, J.

The following acts of assembly are referred to in this cause.

1794, *ch.* 53, enacts, that the justices of the Levy Courts, in their respective counties, "are authorised and required on some day, between the 1st March, and the 1st October, annually, to meet at, &c. to adjust the ordinary and necessary expenses of their several counties; to impose an assessment or rate on all property within their county, sufficient

to defray such county charge; and the said justices shall apportion such assessment or rate, and shall appoint a person or persons *to collect the* same, and every collector, before he acts as such, shall give bond, payable to the State, such as the said justices shall approve of, in double the sum to be collected, with condition," &c.

1817, *ch.* 22, after a preamble, stating that doubts are entertained of the validity of *some* of the acts of the court, because of their not being done within the time directed, *sec.* 1, enacts, "that the several assessments and levies of the public or county taxes, or charges made and imposed by the Levy Court of *Baltimore* county, and the several contracts or bonds made or taken in relation to the collection, or the payment or expenditure thereof, shall be held as effectual and valid as if the same had been fully completed, made or taken, within the time prescribed by law, provided the same shall not alter or affect the legal defence of the collectors against any claim or suit, which has been, or may be preferred against them, for any thing done heretofore."

Sec. 2, enacts, that the Levy Court of *Baltimore* county, "be, and it is hereby authorised and empowered to meet for the transaction of public business, at, &c. and on, or at such days and times as the said court shall consider expedient, between the 1st day of March, and the 31st day of December, in each and every year hereafter, and may continue by adjournment or otherwise, from day to day, or time to time, until the public business shall have been completed: *Provided nevertheless*, that the levy for each year shall be completed within the year."

Sec. 3, gave special power to complete the levy for the year 1817, appoint *a* collector, finish all the unsettled business of the county, and take a bond from the collector.

1817, *ch.* 142, *sec.* 2, authorised the Levy Court "to appoint as many collectors for the city of *Baltimore* as they may think necessary, who are to give bond in such penalty with such security as the said court shall approve."

Sec. 3, enacts, "that the said collectors shall each and every of them finish and complete the collections of such of the assessments as may be placed in their hands, by the time prescribed by law, or assigned by the said court for the completion of the same, and shall pay and account for the same in such manner, and at such times as the said court shall direct or appoint."

1817, *ch.* 182, authorised the Levy Court of *Baltimore* county to appoint *as many* collectors as they deemed necessary, to collect the county tax for the year 1817, and declared, they should give such bonds as the court should prescribe.

1823, *ch.* 32, enacted, "that the Levy Court of *Baltimore* county, be, and they are hereby authorised and empowered to make and close the levy of the said county for the year 1823, on or before the 1st day of March, 1824." Passed 31st December, 1823.

*Williams*, (District Att'y, U. S.) and *Gwynn*, for the appellant, contended,

1. That the plaintiff is entitled to recover on this bond, notwithstanding the Levy Court of *Baltimore* county ceased to exist in November, 1827. 2. That the Levy Court had authority under the act of 1823, *ch.* 32, to appoint collectors of the levy for the year 1823, at any time previous to the 1st of March, 1824. 3. That the bond in question is good and valid in law, although not executed, nor approved before the 2d of March, 1824. 7 *Harr. and Johns.* 339, 343. 4. That the first breach in the replication, to the first plea is good in law, and that the rejoinder thereto furnishes no sufficient answer to the said breach. On the *first* point, they referred to the acts of 1817, *ch.* 142, *sec.* 2, and 1826, *ch.* 217. 1827, *ch.* 23. 2 *Harr. and Johns.* 45.

On the *second* point, to the act of 1794, *ch.* 53. 1817, *ch.* 22, *sec.* 2, 3. 1823, *ch.* 32. 1 *Kent's Com.* 431, &c. 7 *Harr. and Johns.* 79. On the *fourth* point they argued, that the breach was assigned in conformity to the act of 1794, *ch.* 53,

and that the rejoinder thereto is a departure from the plea of performance. To show what constitutes a departure, they referred to 2 *Johns. Dig.* 217. 11 *Johns. Rep.* 182. 20 *Ib.* 153. *Cox's Dig.* 109.

As upon the demurrer to the defendants' rejoinder to the first breach, the court is to go up to the first fault in pleading; the question is, upon the sufficiency of this breach, which charges the failure of *Dorsey* to collect—to show it to be a good assignment they cited 1 *Chitty Plead.* 326. 5 *Com. Dig. Plea. C.* 46. 2 *Harr. Ent.* 350, 408.

*Gill*, for the appellee, contended,

1. That under the act of 1794, *ch.* 53, which was the basis of the Levy Court system, those courts were commanded to discharge all their public duties between the 1st of March and 1st of October, in every year. They were courts of restricted and special jurisdiction, and had no power to act, but within those periods. *Levy Court vs. Merryman*, 7 *Harr. and John.* 88. That court could not approve and accept a collector's bond, but within the restricted period. The Legislature intended that the business of each year should be entirely transacted between those months; and the practice has uniformly been, when the court failed to perform its assigned duties within the prescribed period, to apply to the Legislature for new powers to cure the omission.

2. The act of 1817, *ch.* 22, enlarged the time for transacting the public business as to the city of Baltimore. The time fixed by that law was between the 1st of March and 31st December. It is contended that *Baltimore* Levy Court had no power to adjourn after the 31st December, for any purpose; or that if it had such power, it was only in relation to such unfinished business as was necessarily incidental to a levy, actually made before the 31st December. After that period, the Levy Court could not appoint a collector when the tax of the preceding year had not been ascertained, and consequently could neither accept nor approve of his bond.

3. That the act of 1817, *ch.* 142, was not intended to, and did not enlarge the time, within which the Levy Court was to perform its duties. It merely as regards this question, gave the power to increase the number of collectors within *Baltimore* county at discretion. It left the obligation, as to the time of making the appointment, precisely where it was under 1817, *ch.* 22. The same rule prevails as to approving the bond.

4. It is conceded by the whole case, that the Levy Court for the year 1823, totally failed to make the levy in time. They did no act towards it. The consequence was, an application to the Legislature to heal this defect.

5. The act of 1823, *ch.* 32, merely authorised the court "to make and close the levy of *Baltimore* county on or before the 1st March, 1824." This act was passed on the 31st December, 1823. Now from that period to the 1st March, 1824, the Levy Court, under the act of 1817, *ch.* 22, had no right to assemble or to act; or at most, had but a qualified right, viz. to meet and finish business incidental to the levy of 1823, ascertained prior to the 31st December, 1823.

6. The case presented then under the act of 1823, *ch.* 32, is precisely the same, as if the Levy Court was then called into existence for the first time. Its power to act, according to the principles of *Levy Court vs. Merryman*, was dependent entirely upon the act of 1823.

7. What then is the true construction of the act of 1823? The word levy has received in *Maryland*, by frequent acts of legislation, a meaning which leaves no doubt. It means the gross sum of money to be paid into the treasury; to make and close it, as respects the Levy Court, is the process, the calculation, by which it is ascertained and distributed among the taxable inhabitants. It does not relate to the appointment of a collector, nor include it. It has nothing to do with the approval of his bond. We know that in other cases, when the Legislature intended to heal similar defects, they gave express power to appoint collectors. 1800, *ch.* 1; 1817, *ch.* 22, *sec.* 3; 1817, *ch.* 182.

The conclusion from these positions is, that under the act of 1823, the Levy Court of *Baltimore* county, had no power to appoint a collector for the tax of 1823, nor to approve of his bond. That if they had such power, it must be exercised on or before the 1st of March, 1824, after which time they had no jurisdiction over the business of the year 1823, except to receive the tax if collected, and therefore the judgment of the county court upon the demurrer to the second plea, ought to be affirmed.

Under the act of 1817, *ch.* 142, *sec.* 3, it is contended, that a mere omission to finish and complete the collections within eighteen months, gives no cause of action. The object of the bond was to indemnify against a failure to pay within the time. Whether the collector collects or not, he is still responsible. He is bound to collect. He is armed with special summary powers to enable him to collect. The question in these cases always arises exclusively upon the failure to pay—now by this act, the collector was only to pay and account in such manner and at such times as the Levy Court should direct. The order of February, 1824, appointing this collector, is to this very same effect. It is not alleged in the first breach that the court ever gave directions how, when, to whom, or what time, this payment should be made. The money does not necessarily go to the Levy Court. The constant practice is to pay county creditors, under the order of the court. It is contended therefore, that the first breach assigned in the plaintiff's replication to the plea of general performance, is insufficient. Admitting the rejoinder to be a departure, the question still arises upon the character of the breach.

The 3d and 4th pleas allege the fact that pending the suit, the Levy Court of *Baltimore* county was abolished by competent authority, and this, it is contended, abated this action. The application of this doctrine depends, it is admitted, upon technical principles and the *Maryland* practice.

We have here a custom of taking bonds payable to the State, in numerous instances.  The right is universally conceded, that the parties for whose protection such bonds are taken, those who are really interested in their being fully and fairly complied with, may, upon their infringement, bring an action upon them.  No application is made to the State, no special permission granted.  The party interested of his own motion may put such bond in suit.  The practice is to endorse the name on the writ, for the use, &c.  The interest of the equitable plaintiff is disclosed in the assignment of the breach.  That interest must exist when the action was commenced.  A cause of action is supposed to be vested in the equitable plaintiff at that time.  The State, the legal plaintiff, has no interest.  The right to bring the action is an equitable one, granted from motives of convenience and public policy.  So far for the plaintiffs.  Then as to the defendants.  This practice assumes, that there is always a competent person in *esse,* or likely to be in *esse* within a reasonable period, for the defendants to settle with; persons having a right to control the action, to dismiss it or enter satisfaction according to circumstances.  This last party succeeds to the use, upon the death of the first *cestui que use,* because entitled to the right, and becomes responsible for costs in case of failure.  The condition of defendants would be truly unfortunate, liable to the action of a nominal plaintiff, if this countervailing and protecting principle did not attach to and follow the action.  In this case the action is not distinguishable from similar actions brought for the use of individuals—Except that this is a much stronger case; for the Legislature abolished the levy court of *Baltimore* county by the act of 1826, *ch.* 217. and have not transferred its outstanding suits and claims or debts, to any other tribunal.  The Levy Court has no successor who can release or discharge the action when prosecuted to judgment.  The demand sought to be enforced here, relates to the city of *Baltimore ;* it is due for taxes collectable within the city, such a demand has not been

provided for by the act last mentioned. What is there then to prevent the application of the general principle, that upon the dissolution of a corporation, its debts are extinguished? This is a public municipal corporation. The Legislature has a right to abolish it at discretion, and resume its property. Now though they have abolished it, they have not resumed its debts nor transferred them. There is nothing then to except the case from the general rule. Will the form of the bond do it? When the *Maryland* practice comes to be considered, we think it will not. Should this action proceed, it must have the anomalous shape of an *ex parte* proceeding. It is concluded from these views, that this case is to be regarded substantially, as if it was the suit of the Levy Court, and there being no statutory assignment of its debts, the action abated upon the extinction of that corporation.

BUCHANAN, Ch. J., delivered the opinion of the court.

*John H. Dorsey*, one of the defendants, was appointed by the Levy Court of *Baltimore* county, on the 19th of February, 1824, one of the collectors of the county tax for the city of *Baltimore* for the year 1823, and on the 2d of March, 1824, he gave his bond to the *State*, conditioned for the faithful discharge *of his duties as such collector*, with the other defendants as his sureties. Upon that bond this suit was brought, to which the defendants pleaded. [Here the Judge referred to the pleadings and judgment of the county court as before set forth, and then said]—The question arising upon the demurrer to the *second* plea is, whether the Levy Court of *Baltimore* county, had any authority to appoint collectors of the tax, imposed for the year 1823, and to receive and approve their bonds, at any time after the 31st of December of that year. The 2d *sec.* of the act of 1817, *ch.* 22, authorises the Levy Court of *Baltimore* county, to meet for the transaction of public business, at such places in said county, and on, or at such days and times, as the said court shall consider expedient, be-

tween the first day of March and the 31st day of December, in each and every year thereafter, and to continue by adjournment or otherwise, from day to day, or time to time, until the public business shall have been completed—with the proviso, "provided nevertheless, that the levy for each year shall be completed within the year." By the 2d *sec.* of another act of the same year, *ch.* 142, the Levy Court is directed to appoint a number of collectors of the tax, who are required severally to give bond to the *State*, in such penalty, and with such security as the court shall prescribe and approve, conditioned for the faithful discharge of their duties as such. Upon which bonds suits are authorised to be brought by the Levy Court, or any person or persons interested therein. And by the act of 1823, *ch.* 32, authority is given to the Levy Court of *Baltimore* county, to make and close the levy for the year 1823, on or before the first day of March, 1824.

In the *State use Levy Court*, &c. *vs. Merryman*, 7 *Harr. and Johns.* 79, it was decided by this court, that under the act of 1794, *ch.* 10, authorising the justices of the Levy Courts of the several counties in the *State*, "to adjourn their respective courts from time to time, for the purpose of laying the levy;" and the act of the same year, *ch.* 53, requiring them "to meet on some day between the 1st of March, and the 1st of October annually, to adjust the ordinary and necessary expenses of their several counties, &c.; and to impose an assessment, &c. sufficient to defray such charges," and "to appoint a person or persons, to collect the same," they had no authority to impose an assessment, after the first of October, or to adjourn beyond that time. And it is perfectly clear, that under the proviso of the 2d *sec.* of the act of 1817, *ch.* 22, the Levy Court of *Baltimore* county, could not have imposed the assessment for the year 1823, after the 31st of December of that year, but for the act of 1823, *ch.* 32, extending the time to the 1st of March, 1824. It is supposed, and the course of the Legislature shows the understanding to have been, that the

Levy Court, was equally restricted in relation to the appointment of collectors. The 3d *sec.* of the act of 1817, *ch.* 22, passed 8th January, 1818, makes provision for completing the levy, and appointing a collector for the year 1817, and finishing the unsettled business of *Baltimore* county for that year, which would have been unnecessary in relation to the collectors, if the Levy Court could have appointed a collector after the 1st of October, 1817. And it is contended that under the 2d *sec.* of the same act, authorising the Levy Court to meet on some day between the 1st of March and 31st December annually, for the transaction of public business, they were restricted in the appointment of a collector to some time between those periods, and that the appointment of *John H. Dorsey*, on the 19th February, 1824, as collector of the tax for the year 1823, was illegal and void. But we do not think so. The collectors are required to give bond in such penalty as the court shall prescribe, and as the amount of the penalty of the bonds to be given, cannot be ascertained before the assessment is made by which it must be regulated, it would seem as if the law looked to the assessment being made, before the appointment of the collectors. It may therefore well be a question, whether the act of 1823, *ch.* 32, extending the time of making the levy for the year 1823, to the 1st of March, 1824, would not of itself, necessarily have carried with it, an extension of the time for appointing the collectors; and we are inclined to think it would, for there could be no necessity for appointing collectors, before the assessment was made. But be that as it may, the 2d *section* of the act of 1817, *ch.* 22, does not restrict the power of appointing collectors to a time within those limits. Inconveniences had grown out of the restriction before existing; legislation had been found necessary to make valid, appointments of collectors, and other acts of the Levy Court, not within the time prescribed, and to authorise the appointment of collectors after the limited time; to prevent which thereafter, seems to have been one of the objects of the 2d

*section* of 1817, *ch.* 22, which, after authorising the Levy Court to meet annually, between the 1st of March and the 31st of December, goes on to say, "and may continue by adjournment or otherwise, from day to day, or time to time, until the public business shall have been completed, provided nevertheless, that the levy for each year, shall be completed within the year." Thus plainly indicating, that although the levy for each year must be completed within the year, yet that other parts of the public business need not be, but for the completion of which they are permitted to adjourn from day to day, &c., beyond the end of the year, if it should be found necessary. The proviso obviously showing, that completing the levy, was the only thing absolutely required to be done within the year. And though it would be unnecessary to appoint collectors, if the levy should not be made, yet that furnishes no reason for a different understanding of that section, for the law presumes that the Levy Court will always do their duty, by completing the levy within the time prescribed—and the act of December, 1823, *ch.* 32, provided against the contingency of their being no levy imposed for the year, by extending the time of imposing it, to the 1st of March, 1824. And the Levy Court being constituted a corporation and body politic, there can on no principle, be any well founded objection to the execution, and acceptance of the bond of *John H. Dorsey*, on the 2d of March, 1824.

The suit being brought in the name of the *State*, and entered for the use of the Levy Court of *Baltimore* county, the demurrers to the *third* and *fourth* pleas, present substantially but one and the same question; which is, whether the Levy Court of *Baltimore* county, having become extinct, and another body politic, and corporate, created in its place since the bringing of the suit, the action can be sustained? When a suit is brought on a private bond, &c. for the use of an individual, the individual for whose use it is entered, is not the legal plaintiff; the use is only entered for the protection of his equitable interest, and if he dies pending the suit, his

death is not the subject of a plea, nor is there for the purposes of the suit, any necessity for suggesting his death, but the suit goes on, as if he was still living, or the use had never been entered. The judgment is rendered in the name of the nominal, the legal plaintiff; and it is nothing to the defendant who may be entitled to the equitable interest. And we can perceive no reason, why in the case of a public bond, with the privilege secured to any person interested to bring suit upon it, there should be any difference. In either case, the suit must be brought in the name of the obligee. In the case of a private bond, the individual obligee is the legal plaintiff for the use of the person having the equitable interest; and in the case of a bond to the *State,* (as here) the *State* is the legal plaintiff; and there is no necessity for the purposes of the suit, to enter the use, whether it is brought for the benefit of an individual or a corporation; nor if entered, does it make any difference to the defendant, how it may vary or change as to the person asserting the same right. It does not affect his defence, nor can any change of the use become a fit subject of plea. The declaration or replication, in the case of a bond with a collateral condition, as this is, assigns the breach and discloses the use, or for what the suit is brought, and the defendant being thus advised, shapes his defence accordingly. The judgment is in the name of the *State,* and will, be for the use of whoever is entitled to the beneficial interest. We think the *third* and *fourth* pleas therefore bad, and that they were properly demurred to.

What has been said in relation to the *second* plea, applies equally to the rejoinder to the *first* breach, assigned in the replication to the *first* plea, with the addition that the rejoinder being of the matter of the *second* plea, it is clearly a departure from the defendant's *first* plea of general performance. It has, however, been contended, that the failure by *John H. Dorsey,* to finish and complete the collections of the tax imposed for the year 1823, within one year and six months after the delivery to him of a copy of

the account of assessment, &c. was not alone a breach of the condition of the bond, and therefore that the *first* breach assigned in the replication is insufficient, in not also stating that he did not pay or account, &c. and that we must mount up to the first fault. But we do not perceive the force of the objection. The act of 1794, *ch*. 53, requires that a collector shall proceed to collect the tax, &c. within six months after having received the assessment lists, &c.; and the 3d *section* of the act of 1817, *ch*. 142, requires that he "shall finish and complete the collections by the time prescribed by law, or assigned by the Levy Court for the completion of the same," "and shall pay and account for the same, in such manner and at such times as the court shall direct and appoint." Taking the two laws together then, (and they are parts of the same system) a collector is required to finish and complete the collections within six months after having received the assessment lists, &c. or by the time assigned by the Levy Court for the completion of the same, and also to pay and account for the same, in such manner and at such times as the court shall direct and appoint. Here then, are two distinct duties required to be performed; one to finish and complete the collections within six months, &c. or by the time assigned by the Levy Court—and the other to pay and account for the same, in such manner, and at such times as the court shall direct; the neglect to perform either of which, is a violation of the condition of the bond, for which an action will lie. And it was not necessary to sustain this suit, to add to the failure by *John H. Dorsey* to finish and complete the collections, &c. (which is the first breach assigned) a neglect to pay and account, &c. which is, of itself, a separate and distinct breach of duty. Here the breach assigned is, that he did not finish and complete the collections within one year and six months, &c. which covers the whole time prescribed by law; the act of 1815, *ch*. 173, allowing to collectors one year after the expiration of the time for which they are appointed, to collect the balances that may be due to them, in

no way relieving them from their liability or their bonds for not finishing the collections within six months; but only giving them for their own benefit and security, the privilege of collecting what they had neglected to collect in due time, in the same manner in which they might have made the collections within the time prescribed, which otherwise they could not have done.

We concur in opinion with the court below, on the demurrers to the *third* and *fourth* pleas, and rejoinder to the *first* breach assigned in the replication; but dissent from the opinion expressed on the demurrer to the *second* plea.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.