STATE OF MARYLAND, use of WILLIAM C. HENDERSON,
Executor of MARIA L. HENDERSON *vs.* JOHN S.
HENDERSON and JOHN W. EGNOR.

*Action on a Guardian's bond—Statute of Limitations—Act of
1868, ch. 357, concerning Limitation of Actions—Time when
the Statute of Limitations began to run.*

In an action on a guardian's bond brought on the 15th day of July,
1878, it appeared that the bond bore date the 20th of September,
1865; that the female ward attained the age of eighteen years on the
3rd of May, 1866; that the guardian stated his only and final account
in the Orphans' Court on the 13th of November, 1867, showing
the amount due the ward to be $1738.48. The breach of the con-
dition of the bond assigned, as the cause of action, was the non-
payment of the money ascertained to be due by the account stated
on the 13th of November, 1867. The defendants pleaded the
Statute of Limitations. HELD:

1st. That there was no sufficient proof to show that the ward had
been kept in ignorance of her cause of action by the fraudulent
concealment of the defendant, her guardian, so as to prevent the
running of the Statute of Limitations. (*Vide Act of* 1868, *ch.* 357.)

2nd. That the Statute of Limitations ran as against the breach
assigned, not from the time of stating the account in the Orphans'
Court, but from the day that the ward attained the age of eighteen
years.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

The *first* and *second* bills of exception are omitted, as
the questions of evidence involved therein were not passed
upon by the Court.

*Third Exception.*—The plaintiff offered three prayers,
of which the following only need be inserted:

State, use of Henderson, Ex'r *vs.* Henderson and Egnor.

3. If the jury shall find that the plaintiff's testatrix was kept in ignorance of her cause of action (if the jury shall find that she had such cause of action) by the fraud of the defendant, John S. Henderson, until the 13th day of November, 1867, and that this suit was instituted within twelve years from that date, then this action is not barred by the Statute of Limitations.

And the defendants prayed the Court to instruct the jury as follows:

1. That if the jury shall find that John S. Henderson was appointed guardian of Maria L. Henderson, and gave bond, as such guardian, on the 20th day of September, 1865, with John W. Egnor and Alexander Hill as his sureties; and further find, that the said Maria L. Henderson was eighteen years of age on the 3rd day of May, 1866; and shall further find that suit was not brought on said bond until the 15th day of July, 1878, then their verdict must be for defendants.

2. That there is no evidence in this cause legally sufficient to support the plaintiff's second replication to defendants' seventh, eighth and ninth pleas. (Pleas of the Statute of Limitations.)

3. That there is no evidence legally sufficient in this cause to support the plaintiff's third replication to defendants' seventh, eighth and ninth pleas. (Pleas of the Statute of Limitations.)

The Court (ROBINSON and STUMP, J.) granted the plaintiff's first and second prayers and rejected his third, and granted the prayers of the defendants. The plaintiff excepted, and the verdict and judgment being for the defendants, the plaintiff prosecuted this appeal. During the pendency of the case in the Court below the death of the equitable plaintiff was suggested, and her executor was made a party.

The cause was argued orally before BARTOL, C. J., MILLER, ALVEY and IRVING, J., and was subsequently re-argued on notes, when BOWIE, BRENT and GRASON, J., participated in the decision.

State, use of Henderson, Ex'r *vs.* Henderson and Egnor.

*Henry W. Archer,* for the appellant.

It may be true that there was a breach of the bond in failing to state the account on the ward's becoming of age, but there was another breach of the bond, and the ward is not bound to sue on the first breach. She may pass over any number of breaches, provided the one upon which the action is brought, be instituted within twelve years after the cause of action accruing on that breach. The Statute bars all actions for breaches happening beyond twelve years. *Sanders vs. Coward,* 15 *M. & W.,* 48; *Sanders vs. Coward,* 13 *M. & W.,* 65; *Blair vs. Ormond,* 17 *A. & E.,* (*N. S.,*) 438; *Austin vs. Moore,* 7 *Metcalf,* 116; *State vs. Dorsey,* 3 *G. & J.,* 94; *Byrd & Crisfield vs. State,* 44 *Md.,* 503.

In this last case the Court say, "upon failure to deliver the property, as ordered by the Orphans' Court, the bond at once became liable to suit." *Code, Art.* 93, *secs.* 158, 187, 189.

The breach assigned in this case was the refusal to deliver up the property to the ward. That breach occurred within twelve years.

Sections 192, 153, 155, are *in pari materia,* and should be construed together. Section 153, after stating how the administrator, as *quasi* guardian, shall state his account, proceeds: " And the Orphans' Court shall *thereupon* pass an order directing," &c. " Upon neglect or refusal of the administrator to obey such order, *or* to return an account as herein directed, his bond shall be liable," &c. It is in the alternative, and the breach of either duty will subject the bond to an action. Section 155 provides, that the guardian bond shall " *be in all respects* on a footing with an administration bond." Section 192 provides, that the guardian shall render a final account, and deliver up, &c. Section 153 provides, that the guardian shall render an account under oath, and the Court shall *thereupon* pass an order, &c. The order is to be passed " *thereupon.*" The

State, use of Henderson, Ex'r *vs.* Henderson and Egnor.

*account* is to be *first* rendered. The order would scarcely be passed until it was ascertained by the account that there was money in the guardian's hands belonging to the ward; it is to be passed *thereupon.*

Section 155, in prescribing the condition of the bond, provides, "*and shall also* deliver up the said property agreeably to the order of the said Court or the directions of law." Until the account is rendered, the ward cannot with safety release; he has no means of ascertaining whether all the property is delivered up or not, hence the force of the word "*thereupon.*" Besides the Court can proceed against the guardian by attachment and sequestration to compel an account. But an opposite construction would compel the ward to bring suit before an account, and before he could know how the account stood, or whether the guardian was indebted to him at all.

But supposing that Limitation runs against all breaches, whether they have occurred or not, still this action has been brought in time. Sec. 192, of Art. 93, provides, that on the ward's arrival at age, the guardian shall exhibit a final account, &c. To exhibit this account the guardian has a *reasonable time.* Time is not of the essence of the matter, and from the 3rd of May to the 15th of July, is not an unreasonable time.

In *Griffith vs. Parks, et al.,* 32 *Md.,* 9, this Court has said, "As the account is to be rendered to the Court *after the ward becomes of age,* its jurisdiction and control of both fund and guardian, must of necessity remain until such final accounting," &c.

The account of a guardian may be complicated; it may contain charges against a ward which require investigation; evidence may be necessary to be taken. It would seem most unreasonable to hold that a forfeiture of the bond had occurred upon the very day of the ward's maturity, though the guardian was in no default; and this, too, in a matter where time was not of the essence.

If, as this Court has said, "the account is to be rendered to the Court *after the ward becomes of age,*" what time has the guardian within which to render it? Surely a reasonable time. It is clear this Court in *Griffith vs. Parks,* thought the bond was not forfeited on the very day of the ward's arrival at maturity. If not on that day, what day? If the bond is not forfeited on the very day, the only other day is a reasonable day afterwards.

This action having been commenced on the 15th of July, 1878, and the 15th of July, 1866, being a reasonable time after the 3rd of May, (the day on which the ward became of age,) for the guardian to state his account, the action is not barred by Limitations, even though the Court shall be of opinion that the failure to render the account is the only breach for which suit can be brought.

Sections 158, 187 and 189, are in *pari materia* with sec. 192, and all of those sections give a *reasonable* time.

To the defendants' pleas of the Statute of Limitations, the plaintiff filed two special replications, under the Act of 1868, ch. 357; and also by his third prayer raised the same defence. It is conceded that there was no evidence of fraud by the surety, Egnor. But there is evidence to support the replications and third prayer, and it is not necessary that we should show fraud upon the part of Egnor.

The plea of the Statute of Limitations was a *joint* plea. If, therefore, it was not a good plea for both, it was not a good plea for either. The law is so laid down in 1 *Wms. Saunders,* 28, and *Williams,* in note 2 on that page, asserts the same law.

The principle is the same where an action is brought or a defence set up by partners. *Jones vs. Yates,* 9 *B. & C.,* 436; *Kendal vs. Wood, L. R.,* 6 *Exchequer,* 243.

Wherever the right of action or defence is *joint,* unless both can use it neither can—otherwise the guilty party will get the benefit of the action or defence. In this

case, if we cannot reply the fraud of Henderson in answer to the *joint* plea of the Statute, because Egnor has committed no fraud, then Henderson will get the benefit of this very defence which the Statute was made to deprive him of, and which he could not get if he were sued alone.

But the Court refused the third prayer, because it thought there was no evidence that Henderson had kept his daughter (the plaintiff's testatrix) in ignorance of her cause of action by fraud, and granted the defendants' second and third prayers.

We think there was evidence from which the jury would have been warranted in finding that John S. Henderson kept his daughter and ward in ignorance of her cause of action through fraud.

*W. S. Evans* and *H. McCullough,* for the appellees.

The Statute of Limitations, pleaded in this case, is a complete bar to the plaintiff's cause of action on the guardian bond, twelve years having elapsed between the breach of the condition of the bond and the date of the institution of the suit. *Code, Art.* 57, *sec.* 3.

The ward was of age to receive her money the third of May, 1866, and suit was brought the fifteenth day of July, 1878. The breach alleged in the plaintiff's declaration, was the failure of the guardian " to deliver up and pay over as required by law." The question then is, when did the breach occur? Sec. 192, of Art. 93, of the Code, says, " on a ward's arrival at age, or on the marriage of a female ward, the guardian shall exhibit a final account to the Orphans' Court, and shall deliver up agreeably to the Court's order, etc., ＊ ＊ ＊ and a female shall be of age at eighteen for the purposes of this section." This section imposes two distinct acts. The guardian shall state his final account. He shall deliver up, etc. A failure to do either is a breach of the condition of the bond. There can be no difficulty as to when the

breach of the condition of the bond occurs—the statute determines the time. It is "on the ward's arrival at age." She was of age on the 3rd of May, 1866. It was the guardian's duty to state the account *then.* It was his duty to deliver up and pay over the ward's estate *then,* and not to defer it until November, 1867. In contemplation of the statute, *these are the final breaches.* The guardianship terminated by operation of law. The legal control of the person and estate of the ward ceased on the 3rd day of May, 1866, the time at which she arrived at eighteen years of age. The statute does not fix one time for the guardian to state his final account, and another for the delivery of the estate; it must be at the *particular time.* This is not a case of continuing breaches. The plaintiff has declared upon a particular breach of the condition of the bond, "the failure to deliver up and pay." The Statute of Limitations is to the breach declared upon.

And where a particular breach of the condition of the bond is alleged by the plaintiff as his cause of action, and upon Limitation pleaded, it appears from the evidence that twelve years have elapsed before action brought, the remedy is barred.

There is no authority for the position assumed by the appellant that the guardian shall have a *reasonable time* to comply with the requirements of section 192. No time is necessary. It is the guardian's duty to know when his ward arrived at age to receive her estate. It was his duty to make his investments accordingly. It was his duty to prepare his account for final settlement *against that time.* The fact that the Court of necessity has jurisdiction until the settlement of the account, does not in any manner change the time at which the breach of the conditions of the bond occurred.

The appellant concedes that there was no evidence of fraud on the part of the surety Egnor, but insists that it is not necessary to show fraud on the part of Egnor, but

that if the Statute of Limitations was not a good plea for both, it was not a good plea for either, and that the principle is the same as when an action is brought or defence set up by partners. We deny that there is any evidence of fraud in this case to support the second and third replications to defendants' seventh, eighth and ninth pleas; but if there is any such evidence of fraud, we claim that John W. Egnor, if deprived of his legal defences, would be the *defrauded and injured* party, because the guardian and ward continued to reside together for nearly twelve years after the alleged breach of the condition of the bond. During all that time the surety, Egnor, had no notice of the breach. The equitable plaintiff, during all this period, if her evidence be true, knew of the existence of her claim, yet took no steps to enforce it. She stood by and saw the guardian fritter away her estate and his own, without objection, for a period of twelve years, and then, after she, by her *own negligence or design*, had slept upon her rights until the insolvency of the guardian, comes into Court to enforce the payment of her claim against her father's surety as guardian, at a time when it would be impossible for the surety to reimburse himself from the principal.

The Court did not err in granting the defendants' second and third prayers, and rejecting the plaintiff's third prayer, because there was no evidence that the plaintiff's testatrix was kept in ignorance of her cause of action. She admits that she knew of her father's indebtedness on the very day of the execution of the release. He promised to give her two notes. Again, she overheard him say if she were to get married, he did not know what would become of him and the children, as she would want her money. Establishing, beyond all controversy, that she was not kept in ignorance of her right of action. It establishes another fact, that there was *no concealment* in reference to the business between the father and daughter. Her evi-

dence shows that she knew of her cause of action—her father's indebtedness to her—and yet she says she never asked him for a settlement.

The mere fact of the existence of confidential relations between the father and child, raises no legal presumption of fraud. And there is nothing in the evidence to show either concealment or fraud. On the very day that this release was executed, we find the father admitting his indebtedness.

IRVING, J., delivered the opinion of the Court.

This suit was instituted by the appellant's testatrix on the fifteenth day of July, eighteen hundred and seventy-eight, upon the bond of John S. Henderson, her father and guardian, dated the twentieth day of September, eighteen hundred and sixty-five. Henderson, the principal, and John W. Egnor, one of the securities, are before the Court; the other security was returned *non est.*

The *narr.* sets out that John S. Henderson was, by the Orphans' Court of Cecil County, appointed guardian to Maria L. Henderson (appellant's testatrix) and gave bond and security for the faithful performance of his duties as such guardian, and that John W. Egnor and one Alexander Hill were sureties on his bond. It then sets out the bond in substance, and alleges that after such appointment and the execution of his bond as guardian, he received into his hands large sums of money belonging to his ward, Maria L. Henderson, and that on the thirteenth day of November, 1867, John S. Henderson passed an account in the Orphans' Court of Cecil County, of his receipts and disbursements on behalf of his ward, whereby after deducting all allowances for debts and commissions, it appeared that there was due the ward from her guardian the sum of seventeen hundred and thirty-eight dollars and forty-eight cents; that this account was passed by the Court; but that although often demanded the amount

thus found due had never been paid. The defendants pleaded nine pleas. The first two were pleas of general performance; the third and fourth pleas of payment; the fifth was a plea of release; the sixth, accord and satisfaction, and the seventh, eighth and ninth, pleas of the Statute of Limitations. General replication was entered to all but the fifth plea. So that four special replications were interposed, and special replications were also filed to the seventh, eighth and ninth pleas. To the second replication to the fifth plea, defendant demurred, and issue was joined on the rest. The view which a majority of the Court take of the questions arising upon the Statute of Limitations, makes it unnecessary to consider and decide the question raised by the demurrer. It also relieves us of passing upon the questions of evidence which are presented in the bills of exception.

The first question then necessary for us to examine arises on the third prayer of the plaintiff which was rejected by the Court. That prayer invoked the principle that when a party has been kept in ignorance of his rights by the fraud of the defendant, the Statute of Limitations shall not be permitted to run until such time as with reasonable diligence the plaintiff might have discovered the fraud.

Reliance is placed on the Act of 1868, chapter 357. This act was the subject of construction by this Court in *Wear vs. Skinner*, 46 *Md.*, 257, and in that case it was decided that this Act " was passed for the purpose of enabling parties to set up the fraud of the defendant in a Court of law as well as in a Court of equity," for the purpose of removing the bar of the Statute.

There was no error in the Court in rejecting the prayer, for it excluded from the consideration of the jury one most material element necessary to the protection which the Statute intended to secure, namely, that by ordinary diligence the fraud could not have been discovered sooner.

Assuming that the prayer was free from this objection, we still think the Court right in rejecting it for want of sufficient proof to support it. The Court in *Wear vs. Skinner*, decides that where a *fraud* has been committed, no other distinct fraudulent act is necessary, but that concealment of the fraud is "in itself a fraud." But the Court contemplated that there must be at some time conduct amounting to a fraud, the concealment of which would be a fraud, and relieve the party from the bar of the Statute. So long as that ignorance existed, or by reasonable, or, as the Statute says, "ordinary" diligence, the fraud could not be discovered. It is *"the fraud"* which the statute says is to be discovered. The concealment itself may be of such a character, by active means on the part of the defendant, as to be a fraud on the claimant; but the statute could not have intended that the bare omission on the part of a debtor to remind his creditor of his cause of action against him should be regarded as fraudulently intended to keep him in ignorance of his claim. If it were shown that the ward did not know her father was her guardian, and did not know that she had property in her guardian's hands, that she was entirely ignorant on that subject till she was taken to the Register's office for settlement, there would be some ground for holding that concealment under such circumstances was a fraud; but no such proof is here. This ward knew her father was her guardian, and that she had property. She had received money from him before the day of the settlement at the Register's office on the 13th of November, 1867, and receipted for it to him. She so testifies herself. It was done, she says, at home, but the date of that transaction is not given. She was not therefore ignorant of her father being her debtor; and he had not concealed from her the fact of his indebtedness till the 13th of November, 1867, as the instruction left the jury to find might be the case. The question is, whether the ignorance of the plaintiff

was the result of fraudulent concealment on the part of the guardian, and we see nothing in the proof to warrant a jury in finding fraud in that regard. It follows, therefore, that the Court was right in rejecting the third prayer of the plaintiff, and in granting the second and third prayers of the defendants applying to the same subject.

The only remaining question is, whether the Circuit Court was right in granting the first prayer of the defendants? That prayer presents the question, when the Statute of Limitation begun to run, and from what time it is to be computed in this case? The defendants insist that the Statute begun to run from the moment the ward reached eighteen years of age, when, by law, she was emancipated from her guardian. On the other hand, the plaintiff contends that Limitations did not begin to run until the guardian had passed his account in the Orphans' Court. It is urged that, by the law, it was his duty to pass such account, and consequently his bond was bound till that duty was performed.

By the Code the Statute begins to run from the breach of the condition of the bond. When did the breach in this case occur? Sec. 192 of Art. 93 of the Code provides thus: " On a ward's arrival at age, or on the marriage of a female ward, the guardian shall exhibit a final account to the Orphans' Court, and shall deliver up, agreeably to the Court's order, to the said ward, or to the husband, as the case may require, all the property of such ward in his hands, including bonds and other securities, and, on failure, his bond may be put in suit, and he shall be liable to attachment, and fine not exceeding three hundred dollars; and a female shall be of age at eighteen for the purposes of this section."

This section is identically the same as the provision of the Act of 1798 on the subject, and commenting thereon in *Green vs. Johnson*, 3 *Gill & Johns.*, Judge DORSEY says,

"the moment a ward is emancipated from the authority of his guardian, by reaching the age prescribed by law, his cause of action is complete and the Statute of Limitations begins to run." The reason assigned for this is, that instantly on his arriving at age "he is emancipated from the control of the guardian, and the trust ceases to be a subsisting trust by its own limitation." In the text of *Angel on Limitations, sec.* 178, the same law and reason are laid down. From the moment the ward reaches the age when the law makes him free, what the guardian owes the ward becomes a debt for which he may immediately sue. All money due him and property belonging to him are from that moment legally demandable, and he may sue the guardian on his bond for its payment and delivery. The right of action being *then "complete,"* the Statute begins to run from that time. So soon as the ward arrives at age, the guardian is bound to pass his final account and pay over. In the case of a revocation of a guardianship and the appointment of a new guardian, the Code, Art. 93, secs. 187 and 189, provide for the allowance of "a reasonable time" by the Orphans' Court to the guardian within which to pay over the money and deliver the property to the new guardian, and not till after the expiration of such *appointed time,* and neglect to comply with his duty may his bond be ordered to be put in suit by the new guardian. Sec. 192 makes no such provision for "reasonable time" or delay. It proceeds on the theory that the guardian knows when his ward will be of age, and that he will be ready when that time comes to make a full exhibit of all he has done as his guardian, and that he will be ready immediately to pay and deliver over to his emancipated ward. The law, therefore, directs that, "on the ward's arrival at age," he shall pass his account and shall pay over. It was the guardian's duty to pass that account *then,* and his failure to do it was a breach of duty, for which he was liable to suit at once. So long as

he delayed, it was not a *new* breach, but a *continuing default* and a continuing breach. "On" means "at the time of," says Webster, and Worcester says "immediately." It cannot mean "after" except in the sense that the time *immediately* succeeding and "in contact with" the birth-day is such. This view is not believed to be, nor intended to be, in conflict with the rulings of this Court in *Byrd vs. Crisfield*, 44 *Md.*, 503, nor of *Griffith vs. Parks*, 32 *Md.*, 9, nor *Thruston vs. Blackiston*, 36 *Md.*, 501.

The case of *Byrd vs. Crisfield* was a case of revocation of guardianship, and controlled by the sections already referred to on that subject. The case of *Thruston vs. Blackiston* was on a trustee's bond, and wholly dissimilar to this. The case of *Griffith vs. Parks* was upon another question, and in no way involved the question of *Limitation*. It is well settled that, when the Statute once begins to run, no circumstance will stop its progress. *Ruff's Adm'r, d. b. n. vs. Bull*, 7 *H. & J.*, 14. If the theory of the appellant prevailed, the continued negligence of the guardian to pass his account, creates a new default by which he can get the full benefit of his suit, notwithstanding he has had a full right of action from the date that he came of age. The running of the Statute would thus be either stopped or its effects wholly avoided. The allegation in the *narr.* is not the allegation of a neglect to pass his account, but only a statement that at a particular time he did state an account by which a particular sum was found to be due which he has not paid over. That sum was due when the ward arrived at age, and the account could have been stated then, and ought to have been, and the ward could have sued and coerced the statement then, or have shown the amounts which passed into her guardian's hands, and recovered without abatement, if the credits had not been claimed. But it is said that, by the Code, Limitations begin to run from the breach of the bond, and the breach for which this suit is brought is the

non-payment over of the sum ascertained to be due on that accounting eighteen months after the ward came of age. If there had been no account passed and suit had been brought, as was done, and on the trial the amount due had been established, there could be no contention that the Statute of Limitations did not begin to run from the time the ward reached legal age. If, therefore, the statement of the account makes any difference, we have the anomaly of a discharge of duty extending the period of liability. The law does not contemplate a different period from which the Statute shall run according as the breach may be assigned or may actually be. There is no separate time as applicable to each breach. The action is one. The liability is one. The duty is one, though it involve the doing of several things. The Statute begins to run from the moment the ward is *sui juris*, and can enforce his rights against his guardian and his sureties for any of the defaults of the guardian, and get redress. The measure of his damages in any case would be all that was due him.

If the ward has slept on her rights, she must bear the consequences. The securities cannot suffer by it. No matter in what form the breach is alleged, the default will relate to the time when the duty of the guardian to finally account and pay over first attached, and the ward could sue in his own name. If such was not the law, the Statute of Limitations would afford no protection to securities on guardian bonds. Just so long as the guardian saw fit to delay passing his final account, and the ward chose to indulge and did not sue, the right of action would be preserved by the guardian going at any time and passing the final account, notwithstanding the Statute of Limitations; which, if suit had been brought without waiting for an account, would have run from the ward's arrival at age. The passing of the account, no matter how long delayed, would have the effect to revive

State, use of Henderson, Ex'r *vs.* Henderson and Egnor.

a right of action, perchance already barred, so that Limitations would then begin from the passing of the account.

It is plain, that as against sureties at least, that is not just and cannot be sound. We are of opinion, therefore, that in a suit on the bond of the guardian, the Statute begins to run from the day the ward arrives at age; and the Court below properly instructed the jury in granting the defendants' first prayer. The proof when the ward reached legal age was all one way, and was conclusive of the case, under the instructions of the Court on the subject which we have approved; and the jury could not find otherwise than for the defendants. It is for this reason we are relieved from deciding on the other questions raised by the record. The judgment will be affirmed.

*Judgment affirmed with costs.*

(Decided 1st July, 1880.)

ALVEY, J., filed the following dissenting opinion:

In this case I must enter a dissent.

The bond sued on bears date the 20th of September, 1865; the female ward attained the age of eighteen years on the 3rd of May, 1866; the guardian stated his only and final account in the Orphans' Court on the 13th of November, 1867, showing the amount due the ward to be $1738.48; and this action was brought on the 15th day of July, 1878;—within less than eleven years from the time of the passage of the account in the Orphans' Court. The breach of the condition of the bond assigned, as the cause of action, is the non-payment of the money ascertained to be due by the account stated on the 13th of November, 1867.

By granting the first prayer on the part of the defendants by the Court below, and by the opinion of the majority of this Court, the Statute is declared to run as

against the breach assigned, not from the time of stating the account in the Orphans' Court, but from the day that the ward attained the age of eighteen years. To this I cannot agree.

It has been expressly decided by this Court, and, if there be any stability in decisions, it must be taken as settled, that, in actions on bonds of the character of the one sued on here, the bar of the Statute commences to run only from the time when the breach of the condition of the bond occurs. This was expressly ruled in the cases of *Thruston vs. Blackiston,* 36 *Md.,* 501, and *Byrd & Crisfield vs. State, use of Stewart,* 44 *Md.,* 492. Until the breach of the condition did occur there was no cause of action; and there may have been as many distinct breaches of the condition as there were distinct duties required of the principal in the bond. *State vs. Dorsey,* 3 *G. & J.,* 75, 94.

By sec. 192 of Art 93 of the Code, it is made the duty of guardians, upon the arrival at age of their wards, or on marriage of female wards, to exhibit a final account to the Orphans' Court, and to deliver up, agreeably to the order of the Court, to their wards, all the property of every kind and description in their hands; and on failure their bonds may be put in suit. This of course, contemplates time after the arrival at age of the ward; at least there must be allowed a reasonable time thereafter for settling the account in the Orphans' Court, before there is a breach of duty occasioned by the non-settlement of such account. *Griffith vs. Parks,* 32 *Md.,* 1, 8.

But the settlement of the account in the Orphans' Court is one thing and a particular duty, and the payment of the amount ascertained to be due the ward is another thing and a distinct duty; and the failure or neglect to perform either of these duties could be assigned as a breach of the condition of the bond. *State vs. Dorsey, supra.* The ward was not bound to sue for the first breach that occurred,

State, use of Henderson, Ex'r *vs.* Henderson and Egnor.

assuming that there was a breach committed in failing to settle the account in the Orphans' Court within a reasonable time after she arrived at age. She may have preferred, and it may have been to her interest, to take proceedings to compel the guardian to settle the account of his guardianship in the Orphans' Court, before bringing suit upon the bond. It was certainly contemplated by the statute, with reference to which the bond was given, that such final account should be stated; and when that account was stated, and approved by the Orphans' Court, it at once became the duty of the guardian, by force of the statute, to pay over whatever was in his hands belonging to the ward; and his failure so to do constituted a distinct breach of the condition of the bond.

This principle of pleading is very plainly stated by the learned Judge who delivered the opinion of the Court in the case of the *State vs. Dorsey*, before referred to; and if additional authority be needed, it may be found in the case of *Sanders vs. Coward*, 15 *M. & W.*, 48, 56. In this last case, Baron PARKE, in delivering the judgment of the Court, and speaking of the application of the defence of the Statute of Limitations to breaches of the condition of a bond, said: "Although, on the first breach of the condition of a bond, the obligee may sue the obligor, and have judgment under the Statute of 8 and 9 W. III, ch. 11, as a security of a higher nature for future breaches, he is not bound to pursue that course. He may waive the right of action on the bond, in respect of the first breach, or any number of breaches, and be contented with the specialty security only for future breaches, and sue afterwards on a subsequent forfeiture, and assign that for a breach. If it were not so, the inconvenience would be considerable, and the value of a security by bond diminished."

It is not the penalty of the bond that forms the real cause of action, but the breach of the condition, (*Sanders*

County Comm'rs of Anne Arundel County *vs.* Duvall..

*vs. Coward,* 13 *M. & W.,* 71;) and here the breach assigned is the non-payment of the money ascertained to be due by the settlement of the account in the Orphans' Court. And as that breach occurred within less than twelve years before action brought, in my judgment, the Statute forms no bar to the recovery of the money due, according to the account stated in the Orphans' Court.

MILLER, J., concurs in this opinion.