(Decided 7th January, 1874.)

---

WILLIAM LOGAN and others *vs.* THE STATE OF MARY-LAND, use of ISAAC NESBITT's Administrators.

*Practice—Construction of sec.* 10 *of the Act of* 1794, *ch.* 54— *Officers' Fees placed in hands of Sheriff for Collection ; Act of* 1779, *ch.* 25, *sec.* 11 ; *Evidence.*

Suit was brought on a sheriff's bond to recover fees placed in his hands for collection by Isaac Nesbitt, clerk of the Circuit Court. The original writ, endorsed "State of Maryland, at the instance and for the use of Isaac Nesbitt," *vs.* the principal and sureties on the bond, was returned *"non sunt."* Sixteen other successive writs were issued from term to term, all of which except the last, were returned *"tarde."* Under the seventeenth and last writ issued on the 18th of July, 1865, and endorsed in the same way, the defendants, save one who was dead, was summoned, appeared by counsel, and with other pleas, pleaded limitations. Isaac Nesbitt died on the 1st of June, 1865, and letters of administration were granted on the 13th of the same month—his death was suggested and his administrators appeared and had the case entered on the docket "at their instance and for their benefit."

Section 10 of the Act of 1794, ch. 54, provides "that in any suit which shall or may hereafter be ordered or directed on any administration, testamentary, inspector's, collector's or sheriff's bond, the clerk shall and he is hereby directed, before the issuing of the writ, to endorse thereon the name or names of the party or parties at whose instance and for whose use the said suit was instituted ; and in case the said action shall or may be struck off, discontinued, or *non prossed*, or in case there be a judgment or verdict in favor of the defendant, the party or parties at whose instance the action was instituted, shall be answerable for the legal costs of suit, and may be proceeded against by attachment," &c.    The defendants· contended that under this provision of the Act of Assembly, the death of Nesbitt prior to the issuing of the last writ rendered such writ nugatory, unauthorized and illegal, and consequently there was a discontinuance of the action, which let in the plea of limitations.    HELD :

That it was entirely immaterial whether the last writ had the name of a deceased party endorsed on it as the *cestui que use* or not, or whether it was issued under directions given by Nesbitt in his life-time to keep the suit alive, or by order of his administrators after his death, or by the clerk himself in supposed obedience to the rule of Court to renew as of course unless otherwise specially directed.    The fact that the State was and continued to be the legal plaintiff in the action, and that the writ was in fact renewed in due time commanding the defendants to appear and answer "an action at the suit of the State of Maryland," preserved the continuity of the action and prevented a discontinuance.

The object of the provision of the Act of Assembly requiring the clerk, before issuing the writ, to endorse thereon the name or names of the party or parties at whose instance and for whose use the suit was instituted, was simply to have some person designated and made responsible for costs, including those of the defendant, in case the suit should in any manner terminate in his favor.

The clause of the eleventh section of the Act of 1779, ch. 25, "that no officer herein before mentioned, under the penalty of two hundred pounds for every offence, shall send out his fees on execution but once in every year, between the first day of January and the first day of March," does not compel these · officers, at the peril of losing them, to send out their fees on execution every year, but restrains them from doing so oftener than once in every year. Under this provision an officer may refrain from sending out his fees during the year, counting from the 1st of March to the 1st of March, in which they accrued, and can, unless they have become barred by limitations, place them in the sheriff's hands for collection in any succeeding year, provided he does

so between the 1st of January and the 1st of March, and at no other time during that year.

In an action on a sheriff's bond to recover fees placed in his hands for collection by the clerk of the Circuit Court, an admission and acknowledgment by the sheriff that he had received for collection as sheriff the clerk's fee-bills for the year 1854, is evidence, in the absence of proof to the contrary, from which the jury may infer that such fees were received at the proper time and in the manner required by law.

APPEAL from the Circuit Court for Washington County.

The nature of the case is stated in the opinion of the Court. Reference may be also had to the same case heretofore tried in this Court, and reported in 33 *Md.*, 1.

*First Exception.*—In the trial of this cause, the plaintiff, to support the issues on its part joined, gave in evidence the writs from one to seventeen inclusive—this last writ was dated the 18th of July, 1865—with the returns thereon, and the amended docket entries of the same; also the bond of William Logan and others, dated 5th of December, 1854, together with the approval thereon; also a list of fees that accrued to Isaac Nesbitt, clerk of the Circuit Court, in the year 1854. It was admitted that Isaac Nesbitt was clerk of the Circuit Court for Washington County, for the years 1853, 1854, and the years succeeding to the time of his death; and that the defendant, William Logan, was elected sheriff in the fall of 1853, for two years, and was qualified and served from the fall of 1853 to the fall of 1855. It was also admitted that the said Nesbitt died on the 1st of June, 1865, and that letters of administration on his personal estate were duly granted by the Orphans' Court of said county on the 13th of the same month, to the equitable plaintiffs, Benjamin A. Garlinger and Thomas S. Nesbitt, who gave bond as such on the same day. At this stage of the proceedings the defendants objected to the introduction of the seventeenth writ and corresponding docket entry, on

the ground that since it has appeared by the evidence that the said Nesbitt, for whose use said writ was endorsed, had died on the 1st of June, 1865, prior to the issuing of said writ, a discontinuance was created which let in the plea of limitations pleaded in the cause, and moved to withdraw them from the evidence; the plaintiff resisted the motion and relied also on the following paragraph of Rule 6 of the Court:

"If the writ be returned *non est*, or not served, an order shall be entered for renewal, as of course, unless otherwise directed by the plaintiff."

The Court (MOTTER, J.) overruled the motion of the defendants, and allowed the said writ and entry to remain as evidence for the plaintiff. The defendants excepted.

*Second Exception.*—Abandoned.

*Third Exception.*—The plaintiff proved by Benjamin A. Garlinger, that some time after the death of Nesbitt, the defendant Logan told him that he had in his hands the fees of the said Nesbitt for the years 1853 and 1854; on cross-examination the witness stated that he could not say how long it was after the death of Nesbitt, nor how the conversation was brought about—whether Logan approached him, or he Logan. It was, however, after the seventeenth writ had been served on him. Logan, on the occasion spoken of, said he had fees of 1853 and 1854, or the fees of those years, witness could not remember the precise words, he could not speak positively as to the use of the word *the*. But in further testimony, the witness said that he asked Logan what fees of Nesbitt he had in his hands for collection, and he replied that he had the fees of 1853 and 1854.

The plaintiff further proved by this witness that he had had in his possession a fee-bill receipted by Logan to Mrs. Joseph I. Merrick, for making out a record for the Court of Appeals. It was a bill of 1854 for $80 and some cents. That he had it in a former trial of this

cause, but had lost it. He had made every effort to find it among his papers, but could not succeed. It had Logan's receipt to it, dated long after Logan was out of office as sheriff. He knew it was Logan's signature from his knowledge of his hand-writing; the plaintiff also proved by Alfred D. Merrick, that he paid Logan a fee-bill and took his receipt; its amount was about $80, but he did not recollect dates or time. He gave said bill and receipt to the witness Garlinger afterwards.

The plaintiff then submitted to the Court two prayers, the second of which was not in the record, the first was as follows:

1. If the jury find that in the years 1853 and 1854 Isaac Nesbitt, for whose use and at whose instance this suit was instituted, was the clerk of the Circuit Court for Washington County, and that the defendant, William Logan, was the sheriff of the said county from December, 1853 until December, 1855, and that he and the others mentioned in the bond read in evidence, executed the same, and that it was duly approved by the Judge of the said Court; and further find that afterwards the defendant Logan admitted and acknowledged to the witness, Benjamin A. Garlinger, that the said Nesbitt had placed in his, Logan's hands for collection, and that he had received for collection, as sheriff, Nesbitt's fee-bills for the year 1854, then such admission and acknowledgment is evidence, in the absence of proof to the contrary, from which the jury may infer that such fees were received by the said Logan, at the proper time, and in the manner required by law.

And the defendants asked the following instructions:

1. That if the jury find from the evidence in this cause that Isaac Nesbitt, for whose use this suit is brought, died in June, 1865, and that the seventeenth writ in this cause was issued on the 18th day of July, 1865, for the use of said Nesbitt, then there was a discontinuance of said

action, and the plaintiffs are not entitled to recover under the pleadings in this cause.

2. That if the jury find from the evidence that William Logan was sheriff of Washington County from December, 1853, to December, 1855, and that as such sheriff he gave bond in December, 1854, then the defendants are not liable on the bond declared on in this suit, for any fees which accrued to the said Nesbitt, for whose use this suit is brought, as clerk of the Circuit Court for Washington County, unless said fees were written out, in words, at full length, and were placed in the defendant Logan's hands, as sheriff, between the first day of January and first day of March, 1855, and if the jury find that the fees offered in evidence did not so accrue, and were not so delivered to said sheriff, then the plaintiffs are not entitled to recover.

3. That under the pleadings in this suit, the defendants are not liable, on the bond declared on, for any fees, except such as accrued to said Isaac Nesbitt, for whose use this suit is brought, as clerk of the Circuit Court for Washington county, after the 1st day of March, 1854, and which said fees were written out in words, at full length, and were placed in the defendant Logan's hands, as sheriff, between the first day of January and the first day of March, 1855, and if the jury find that the fees offered in evidence did not so accrue, and were not so delivered to said sheriff, then the plaintiffs are not entitled to recover.

4. That the plaintiffs are not entitled to recover in this suit, except upon fee-bills which accrued after the 1st of March, 1854, and which were placed in the defendant Logan's hands, as sheriff, between January 1st, 1855, and March 1st, 1855, written out in words, at full length, and as there is no evidence in this cause that any fee-bills due to Isaac Nesbitt were placed in his hands, as sheriff, between the times aforesaid, and written out in words, at full length, the plaintiffs are not entitled to recover.

5. That the statement of fees, exhibited to the jury, is not legal and competent evidence, standing alone, of the amount of fees placed in the hands of the defendant Logan, as sheriff, and furnished no evidence that such amount of fees was placed in his hands, and that said statement is not legal and competent evidence, standing alone, upon which the jury can base its verdict in this cause.

6. That if the jury find the facts as detailed by the witness Garlinger, said facts are not sufficient to found a verdict for the plaintiff thereon, because they show no specified amount of fees placed in the hands of the defendant Logan, as sheriff, and furnish no sufficient data by or upon which the amount can be ascertained by them.

The Court granted the first prayer of the plaintiff and rejected the second; and granted the second and fifth prayers of the defendants, and rejected their first, third, fourth and sixth. The defendants excepted to the granting of the plaintiff's first prayer, and to the rejection of their first, third, fourth and sixth; and the verdict and judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON and MILLER, J.

*George Schley* and *D. Weisel,* for the appellants.

When the seventeenth writ in this cause was issued, there was not endorsed thereon, as required by section 10 of the Act of 1794, ch. 54, the name of the party at whose instance and for whose use the said suit was instituted, for Isaac Nesbitt had died on the 1st of June, 1865, and the writ could not have been issued at his instance. It was for that reason nugatory, unauthorized and illegal. There was no name of a living party or *"cestui qui use,"* who could be made answerable for the legal costs of suit, endorsed thereon—a preliminary or

condition precedent *to the right to issue a writ in such case.* It is a contradiction in terms to speak of a suit being at the *instance* and for the use of a dead man. In this case, the first writ was returned *"non est"* and the sixteen succeeding writs with the exception of the last *"tarde,"* and the only writ that was ever served was at the instance of a deceased person. In this case the effort has been made to keep alive the cause of action by the renewal of the writ from the first to the seventeenth and effective writ, and thereby prevent the operation and effect of the Statute of Limitations. What is necessary to be done to accomplish this result is indicated in *Hazlehurst vs. Morris, et al.,* 28 *Md.,* 75, where the Court says, "Where a party institutes a suit, and the summons proves *ineffectual* to bring the defendant into Court, and is returned by the sheriff in order to keep the suit alive, the summons must be *regularly renewed from term to term,* until the defendant is taken. The *omission so to renew it,* operates a *discontinuance of the action."* Apply this law to this case, and how will it stand? The sixteenth writ had been returned on the 6th of March, 1865, by the sheriff *"tarde,"* and that writ was therefore *"functus officio,"* and ineffectual to bring the defendant into Court.

Had the seventeenth writ been issued *during the lifetime of Isaac Nesbitt,* then it could have been endorsed at his instance and for his use prior to its issue, as required by the Act of Assembly, and a suit would then have been depending. But he having died after the return of the sixteenth writ, and before the issue of the seventeenth, that writ could not have been "ordered or directed" (in the language of the Act of 1794) by *him,* and unless "ordered or directed" by him, who could "order or direct" such writ to be issued or renewed? The administrators could not "order or direct" the clerk to renew a writ in the name of a deceased party, and if they had done so, their order or direction would not have invested

the clerk with authority so to do, in the very teeth of the Act of Assembly. And if said writ had been issued at the instance and for the use of said administrators, then it manifestly could not have been a continuation of the former suit, but would have been the inception of a new suit to which the plea of limitations would have been applicable.

The defendants' third, fourth and sixth prayers ought to have been granted, and the plaintiffs' first prayer ought to have been rejected. The Acts of 1731, chap. 15, sec. 2, 1779, chap. 25, sec. 9, 1788, chap. 31, require the particulars of fees of clerks and other officers to be drawn out in a fair, legible hand, and in words at full length, and on failure thereof, said officer to lose such fees so expressed in words cut off or abbreviated. The Act of 1779, chap. 25, sec. 11, provides, "That no officer hereinbefore mentioned, under the penalty of two hundred pounds for every offence, shall send out his fees on execution *but once in every year,* between the first day of January and the first day of March, during the continuance of this Act; and the party charged, his body, goods or chattels, shall not be executed for any of the aforesaid fees, unless his account of such fees be delivered to him or left at his last place of abode on or before the first day of May in any year the said fees shall be sent out or demanded." By the Act of 1822, chap. 219, sec. 1, so much of the above section as requires accounts to be delivered before the first day of May in any year was repealed, and not the whole section, as Judge Dorsey, in his edition of the laws, supposed. Each bond of the sheriff is liable for his acts only for the time of each bond *Ellicott vs. The Levy Court,* 1 *H. & J.,* 359 ; *Kerr vs. The State,* 3 *H. & J.,* 560 ; *Hewitt & Russell vs. The State,* 6 *H. & J.,* 96 ; *The State vs. Turner,* 8 *G. & J.,* 125 ; *Bruce, et al. vs. The State, use of Love,* 11 *G. & J.,* 382.

The bond sued on was executed by the appellants, 5th of December, 1854, and that bond could be liable only for fees accrued to the clerk after 1st March, 1854, and prior to 5th of March, 1855, because the Act of 1779, chap. 25, sec. 11, provides that his fees shall be sent out but *once in every year*, between the 1st of January and the 1st of March. The fees for the preceding year must therefore have been the fees up to March 1st, 1854, and for the next year from 1st of March, 1854, to 1st of March, 1855. The defendants' third and fourth prayers, correctly announced the law, as shewn by the foregoing Acts and decisions. The fourth prayer reiterated the third, and in addition asked the Court to instruct the jury, that as there was no evidence in the cause that any fee-bills due to Nesbitt were placed in Logan's hands, as sheriff, between the times aforesaid, and in words at full length, the plaintiffs were not entitled to recover. This prayer ought to have been granted, and the plaintiffs' first prayer ought to have been refused.

The defendants' sixth prayer ought to have been granted, because there was no evidence of what amount of fees were placed in Logan's hands. The only evidence offered was that pronounced by the Court in granting the defendants' fifth prayer, to be, *standing alone,* not legal and competent evidence, upon which the jury could base its verdict, and yet there was *no other evidence as to the amount of said fees,* to stand by it, the witness Garlinger, *finding no amount,* and the jury in fact, having no sufficient data on which to base their verdict.

*Attorney-General Syester,* for the appellee.

MILLER, J., delivered the opinion of the Court.

Suit was brought in this case on the 3d of December, 1859, on the official bond of William Logan, late sheriff of Washington County, executed on the 5th of Decem-

ber, 1854, to recover fees placed in the hands of Logan, as sheriff, by Isaac Nesbitt, Clerk of the Circuit Court for that county. The original writ endorsed "State of Maryland, at the instance and for the use of Isaac Nesbitt," *vs.* the principal and sureties on the bond, was returned "*non sunt.*" Sixteen other successive writs were issued from term to term, all of which, except the last, were returned "*tarde;*" under the seventeenth and last writ issued on the 18th of July, 1865, and endorsed in the same manner, the present appellants were summoned, appeared by counsel, and with other pleas, pleaded limitations. Mr. Nesbitt died on the 1st of June, 1865, and letters of administration on his estate were granted on the 13th of that month. The fact of Nesbitt's death prior to the issuing of the last writ it is contended rendered that writ nugatory, unauthorized and illegal, and there was hence a discontinuance of the action, which let in the plea of limitations. This question is presented by the first exception, and the rejection of the defendants' first prayer.

In support of this position, counsel for the appellants rely solely upon the 10th section of the Act of 1794, ch. 54, which provides, "that in any suit which shall or may hereafter be ordered or directed on any administration, testamentary, inspector's, collector's, or sheriff's bond, the clerk shall, and he is hereby directed before the issuing of the writ to endorse thereon the name or names of the party or parties at whose instance, and for whose use the said suit was instituted; and in case the said action shall or may be struck off, discontinued, or *non prossed*, or in case there be a judgment on verdict in favor of the defendant, the party or parties at whose instance the action was instituted, shall be answerable for the legal costs of suit, and may be proceeded against by attachment," &c. The argument is that this endorsement thus required to be made by the clerk, is a *con-*

*dition precedent* to the *right* to issue the writ, and without such endorsement, the writ itself is illegal and inoperative; that no such writ could be issued at the instance and for the use of a deceased party, because he could not have ordered or directed it to issue; that his administrators had no right to order or direct the clerk to renew the writ in the name of their intestate, and if they did so order, it would have invested the clerk with no authority so to do; and if the administrators had ordered the renewed writ to be issued for their use, it would not be a continuation of the original suit, but the inception of a new one, to which the plea of limitations would apply.

In our judgment this reasoning proceeds upon an erroneous view of the purpose and effect of the legislative enactment, cited in its support, and of the nature and character of suits upon official bonds in which the State is obligee. The true character of such actions is well stated in the case of *State vs. Dorsey, et al.*, 3 *G. & J.*, 75. That was a suit upon a collector's bond in the name of the State for the use of the Levy Court of Baltimore County. After suit brought the Levy Court became extinct and another body politic and corporate, was created in its place. The defendants interposed this as an objection to the further prosecution of the suit, by pleas in abatement, *puis darrien continuance*. Upon demurrer to these pleas the question arose whether the action could be further prosecuted, and on that point the Court say: "When suit is brought on a private bond for the use of an individual, the individual for whose use it is entered, is not the legal plaintiff; the use is only entered for the protection of his equitable interest, and if he dies pending the suit, his death is not the subject of a plea, nor is there for the purposes of the suit, any necessity for suggesting his death, but the suit goes on as if he were still living, or the use had never been entered.

The judgment is entered in the name of the nominal or legal plaintiff; and it is nothing to the defendant who may be entitled to the equitable interest. And we can perceive no reason why in the case of a public bond, with the privilege secured to any person interested to bring suit upon it, there should be any difference. In either case the suit must be brought in the name of the obligee. In the case of a private bond, the individual obligee is the legal plaintiff for the use of the person having the equitable interest; and in the case of a bond to the State, as here, the State is the legal plaintiff; and there is *no necessity for the purposes of the suit, to enter the use,* whether it is brought for the benefit of an individual or corporation ; nor if entered, does it make any difference to the defendant *how it may vary or change as to the person asserting the same right.* It does not affect his defence, nor can any change of the use become a fit subject of plea. The judgment is in the name of the State for the use of whoever is entitled to the beneficial interest." It is true the defendants in that case had been summoned and the question was whether the suit had abated, but that does not render the reasoning of the Court inapplicable here. The decision that there is no necessity for the purposes of the suit to enter the use, and, if entered, that it matters not to the defendant how it may vary or change as to the person asserting the same right, and the reasons on which it is based, apply to the case before us. We regard it as a plain determination that the entry of the use or the endorsement of the name of the *cestui que use* on the writ, is not essential to its validity, and does not affect the commencement or continuance of the action.

The object of the provision requiring the clerk to make this endorsement was simply to have some person designated and made responsible for costs, including the defendant's costs in case the suit should in any manner terminate in his favor. The omission or neglect of the

clerk to make it, might subject him to an action by the defendant, if the latter be put to loss or inconvenience thereby, but it does not render the writ illegal, or work a discontinuance of the action by being omitted on any of the renewed writs. It was therefore entirely immaterial whether the last writ in this case had the name of a deceased party endorsed on it as the *cestui que use* or not, or whether it was issued under directions previously given by Nesbitt in his life-time to keep the suit alive, or by order of his administrators after his death, or by the clerk himself in supposed obedience to the rule of Court to renew as of course, unless otherwise specially directed. The fact that the State was and continued to be the legal plaintiff in the action, and that the writ was in fact renewed in due time, commanding the defendants to appear and answer "an action at the suit of the State of Maryland," preserved the continuity of the action and prevented a discontinuance. It it well settled that for the purpose of preventing the running of the Statute of Limitations the impetration of the original writ is deemed the commencement of the suit, and if that proves ineffectual to bring the defendant into Court and is returned by the sheriff, the suit may be kept alive by writs of summons regularly and uninterruptedly renewed from term to term until the defendant is taken, *Hazlehurst vs. Morris, et al.,* (28 *Md.,* 75,) and there is no dispute that this writ was in fact renewed without interruption from term to term, until the defendants were summoned.

Nor can we perceive how the security intended for the defendants by this provision of the Act of 1794 has not been afforded them. The original writ was properly endorsed, and so were all the renewals up to the last, and it appears by the amended docket entries respecting that writ that Nesbitt's death was suggested and his administrators asserting the same right, had leave to and did appear, and had the case entered on the docket "at their

instance and for their benefit." Thus all along from the commencement of the suit till final judgment there were parties named on the writs and on the docket entries who would have been responsible in the mode provided by the statute for costs, and to the defendants for all their costs if the action had terminated in their favor. We therefore find no error in the rulings of the Court on this point.

It was admitted that Nesbitt held his office as clerk in 1853 and 1854, and up to the time of his death, and that Logan was elected sheriff in the fall of 1853 for two years and qualified and served from that time to the fall of 1855. By granting the defendants' second prayer the Court instructed the jury that the bond sued on was not responsible for any fees which accrued to Nesbitt, as clerk, unless said fees were written out in words at full length and were placed in the hands of Logan, as sheriff, between the first days of January and March, 1855. By their third and fourth prayers they assert the additional proposition that this bond was not responsible for any fees except such as accrued to Nesbitt, as clerk, after the 1st of March, 1854. This proposition is based upon the first clause of the 11th section of the Act of 1779, chapter 25, "that no officer herein before mentioned, under the penalty of two hundred pounds for every offence, shall send out his fees on execution *but once in every year* between the first day of January and the first day of March." We agree with the appellants' counsel that this clause was not repealed by the Act of 1822, chapter 219, as intimated by Judge Dorsey, in his edition of the laws, 1 *Dorsey's Laws*, 154. It remained in force, and is embodied in the Code, (Art. 38, sec. 2,) with slight modifications in these words: "No officer, under the penalty of five hundred dollars, shall send out his fees on execution *more than once in every year*, between the first day of January and the first day of May." But we do

not agree with the construction they place upon this provision. It does not, as contended, compel these officers, at the peril of losing them, to send out their fees on execution every year, but restrains them from doing so oftener than once in every year. According to our construction of this provision, an officer may refrain from sending out his fees during the year, counting from the 1st of March to the 1st of March, in which they accrued, and can (unless they have become barred by limitations) place them in the sheriff's hands for collection in any succeeding year, provided he does so between the 1st of January and the 1st of March, and at no other time during that year. Thus, Mr. Nesbitt might have retained his fees accruing after the 1st of March, 1853, and placed those with the fees accruing after the 1st of March, 1854, in the hands of the sheriff for collection between the 1st of January and the 1st of March, 1855, and for the collection of such fees the sheriff's bond, executed in December, 1854, would be responsible. There was, therefore, no error in the rejection of the defendants' third and fourth prayers.

The plaintiffs' first prayer is to the effect, that if the jury find that after the execution and approval of the bond sued on, Logan admitted and acknowledged to the witness Garlinger, that Nesbitt had placed in his hands for collection, and that he had received for collection, as sheriff, Nesbitt's fee-bills for the year 1854, then such admission and acknowledgment is evidence in the absence of proof to the contrary from which the jury may infer that such fees were received by the said Logan, at the proper time and in the manner required by law. In our opinion, this instruction was properly granted. The sheriff and clerk were both public officers, bound by oath to the proper discharge of official duties.

The law made it the duty of the sheriff to collect the fees of the clerk lawfully placed in his hands for that

purpose, and his official bond was responsible for the faithful discharge of that duty. The clerk had the right upon complying with certain requirements of the law to place his fees in the sheriff's hands, and demand of him performance of his official duty in their collection. We then find the sheriff admitting and acknowledging that he had received for collection as sheriff, the clerk's fee-bills for the year 1854. From that, and in the absence of all proof to the contrary, we think the jury were properly allowed to infer that the clerk had done all that his duty and interest required of him, in order that he might hold the sheriff's bond responsible, that is, that these fees were written out in words at full length, and given to the sheriff for collection between the 1st of January and the 1st of March, 1855. Our judgment on this question, would not be affected by the fact that it is averred in the declaration under a *videlicet*, that the fees were placed in the sheriff's hands on the *1st of June*, 1855. Even if we were permitted, (as we are not,) to look to anything in the pleadings in determining the correctness of an instruction which makes no reference to them.

The defendants' sixth prayer asserts, that the facts detailed by the witness Garlinger, are not sufficient to found a verdict for the plaintiff thereon, because they show no specified amount of fees placed in the hands of Logan, as sheriff, and furnished no sufficient data, by or upon which the amount can be ascertained by them. This, even if free from other objections, goes too far. It denies that this testimony was sufficient to warrant the jury in finding a verdict for any amount in favor of the plaintiff. It overlooks the fact that Garlinger proved the actual receipt by Logan of the specified sum of $80 and some cents, on a fee-bill for 1854, due Nesbitt as clerk. This with the inferences allowed under the plaintiff's first prayer, furnished the jury with data, sufficiently definite to sustain a verdict for at least that sum,

with interest from the time of its receipt. If the prayer had asserted the proposition, that this testimony was too vague and indefinite to allow the jury to find a verdict beyond this specified sum, a different question would have been presented, but as it stands, the prayer is faulty in the particular indicated and was therefore properly rejected.

The defendants' fifth prayer was granted, and they have abandoned their second exception. No other questions are presented by this appeal, and it follows the judgment must be affirmed.

*Judgment affirmed.*

(Decided 15th January, 1874.)