(Decided 1st March, 1877 )

---

NICHOLAS L. DASHIELL *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE, use of CHRISTIAN HAX and SON.

*Right of Action by the City of Baltimore for the use of the Contractors, to recover a Paving tax assessed on certain lots belonging to the defendant—Questions touching the Acts of Assembly and Ordinances of the City of Baltimore relating to the Paving of streets.*

Certain paving was done in the City of Baltimore, and a tax therefor assessed upon the owners of adjacent lots in the years 1870 and 1871, after the Act of 1870, ch. 282, and the City Ordinance No. 78, of 1870, had been passed. A suit to recover this tax was brought by the Mayor and City Council of Baltimore for the use of C. H. and Son, contractors for the paving, on the 7th of October, 1874, after the passage of the Act of 1874, ch. 218, and the Ordinance No. 44 of that year, which ordinance unconditionally repealed *sec.* 35 *of Art.* 43 of the Code of City Ordinances. This section 35 made it the duty of the City Collector when required by any contractor having a claim for paving done by him, to commence a suit on behalf of such contractor in the name of the Mayor and City Council against any person liable to the tax assessed on his property for such paving. HELD :

Dashiell *vs.* Mayor, &c., of Baltimore.

1st. That the said action did not depend upon said section 35 of Art. 43.

2nd. That the Mayor and City Council had the right to maintain the action.

By the Code of Public Local Laws, Art. 4, sec. 861, power was given to the city to pave any unpaved street, provided the assent in writing of the proprietors of a majority of the ground binding and fronting thereon was obtained. But that section omitted the power, which had long previously existed, of assessing the tax exclusively upon the owners of the adjacent property. The Act of 1870 "repealed and re-enacted" this section retaining its very words but adding the omitted power. The Act of 1874, among other sections relating to the same subject which it repealed and re-enacted with modifications, repealed the Act of 1870 and the section thereby repealed and re-enacted, and enacted in lieu thereof a section in which was still retained the power to pave and assess the tax, and collect the same which existed under the law of 1870. And so far as this power was concerned, it gave authority to provide for its exercise by general ordinance without the necessity of the passage of a special ordinance in each particular case. And such general ordinance was soon afterwards passed. HELD :

1st. That the mere fact that the law of 1870 was by the Act of 1874 declared repealed did not so far obliterate the first law, that it was no longer operative, and that all rights that might have accrued under it were stricken down and their enforcement defeated.

2nd. That the repealing and enacting part of the Act of 1874 took effect at the same instant of time, and the enacting part substantially re-enacted the provisions of the first statute, and its operation continued uninterrupted.

The plaintiff offered in evidence the proceedings for the opening and condemnation of that part of the street on which the paving in question was subsequently done, including the ordinance for that purpose approved May 27th, 1868. The defendant objected to the admissibility of these proceedings because they did not show on their face, and were not followed up by proof on the part of the plaintiff, that the sixty days notice of the application for the passage of the ordinance had been given as required by Art. 4, sec. 838, of the Code of Public Local Laws. HELD :

That although this section of the law made such notice essential to the validity of a condemnation ordinance, the proceedings to open and condemn a street were entirely different from the proceedings to pave it; and if in this action the validity of the condemnation ordinance could be assailed at all for any matter *dehors* the ordinance itself, the *onus* of proof was on the party raising the objection.

Dashiell *vs.* Mayor, &c., of Baltimore.

It was also objected to the admissibility of said proceedings in evidence, that the Commissioners gave by publication twenty-nine instead of thirty days previous notice of meeting to execute their powers and perform their duties under the condemnation ordinance. HELD:

That this was a mere irregularity which might have been availed of on an appeal from the proceedings under that ordinance, but could not be relied on in this action.

The plaintiff also offered in evidence the paving application, and proved the signatures of the several parties thereto. The number of feet represented on the face of the application exceeded the requisite majority. This application was duly advertised and no objection being made, the City Commissioners, with the approval of the Mayor, accepted it, and directed the necessary proceedings for the execution of the work, and the paving was accordingly done. HELD:

That the application to pave when so approved must be taken as *prima facie* evidence of the ownership, and authority to sign, of the several parties signing the same.

That part of the ordinance No. 13, approved June 5th, 1858, which prescribed the dimensions of stones to be used in curbing and paving had in some slight degree been altered by the ordinance of 1870, before the commencement of the paving proceedings now in question. In no other respect so far as affected this case was the ordinance of 1858 changed. The proof showed that the cost of the stones required by the ordinance of 1870 would be slightly less than those required by that of 1858, but that the work was *actually done under the ordinance of* 1870, and accepted by the city. In the *bond* which the contractors gave to the city for the faithful execution of the work, it was stipulated that the work should be done "in strict accordance with the *provisions* of the ordinance No. 13, approved June 5th, 1858," without noticing the modifications of those provisions made by the ordinance of 1870. HELD:

1st. That there was no provision in any of the ordinances on this subject which made the giving and observance of such a bond essential to the validity of the tax.

2nd. That a departure from its terms allowed by the city might be a very good defence for the sureties when sued thereon, but such departure *of itself* could not have the effect to make the tax invalid.

3rd. That under the Act of 1870, the city had the power to include in the tax for *paving*, the cost of *grading* the street preparatory to paving, and assess that upon the owners of adjacent property.

4th. That the city had the power to include in said tax the cost of such grading done on that part of the street embraced by the side walks, as was necessary for the proper laying and protection of the curbing and guttering included in the work of paving.

5th. That charges for establishing the grade, for advertising and surveying, *as also a reasonable commission for collecting the tax,* were included within the term "expenses" as used in the Act of 1870.

The defendant's mother, Mrs. D. in her life-time owned certain lots binding on the street in question, and died in 1869, leaving a will by which she devised them in fee to the defendant. In the assessment warrant the proportionate tax for these lots was erroneously assessed to Mrs. D. instead of the defendant, who at the time the pavement proceedings were commenced, as well as when the assessment was made, was the owner of them. HELD:

That whatever difficulty this mistake might have made in the proceeding to collect the tax by process of distraint, it was entirely competent for the plaintiff in this action of *assumpsit* to show that the defendant was in fact the owner of the lots, and therefore liable to pay the tax assessed therefor.

APPEAL from the Baltimore City Court.

This was an action of *assumpsit* brought by the appellee to recover from the appellant a paving tax, assessed on certain lots belonging to him, fronting on McCulloh street, between Wilson street and North Avenue. The case was tried before the Court, without the intervention of a jury. The verdict and judgment were for the plaintiff, and the defendant appealed. The case is further stated in the opinion of the Court.

The cause was argued before STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*Arthur W. Machen,* for the appellant.

*Albert Ritchie,* for the appellee.

MILLER, J., delivered the opinion of the Court.

In this case an action of *assumpsit* was brought to recover a *paving tax* assessed on certain lots belonging to

the appellant fronting on McCulloh street, between Wilson street and North Avenue. The exceptions taken to the rulings of the Court below, present numerous questions which this appeal makes it our duty to decide.

1st. Can the action be maintained? The paving was done and the tax assessed upon the owners of the adjacent lots, in the years 1870 and 1871, after the Act of 1870, ch. 282, and the City Ordinance, No. 78, of 1870, had been passed. The suit is by the Mayor and City Council of Baltimore, for the use of Christian Hax & Son, and was not instituted until the 7th of October, 1874, after the passage of the Act of 1874, ch. 218, and the Ordinance No. 44, of that year. It has been contended that the right of action is founded altogether upon the 35th section of the 43rd Article of the Code of City Ordinances of 1869, which makes it the duty of the City Collector, when required by any contractor having a claim for paving done by him, to commence a suit on behalf of such contractor, in the name of the Mayor and City Council against any person liable to the tax assessed on his property for such paving, and as this section was *unconditionally repealed* by the ordinance of 1874, no power existed to institute such an action when this suit was brought, and it must therefore fail. When this objection was first suggested we were under the impression it was fatal to the case, but further consideration of the subject has removed that impression.

The provisions immediately preceding this 35th section, direct how the tax shall be collected and what shall be done with the proceeds when collected. They make the taxes a lien on the property and require the City Collector to collect them "by distress or otherwise," and pay the same over to the City Register, and the City Commissioner is then directed to draw on the Register for the amount of the tax, and pay it over to the contractor when it may be collected. Then follows this 35th section which we have

cited, authorizing a suit, and this, in our opinion, in no way interferes with the disposition of the proceeds previously directed. The fruits of judgments recovered in such suits, like collections made in any other way, are to be paid to the Register, and drawn upon by the Commissioner in favor of the contractor. The requirement that such suit shall be instituted by the Collector, on the written request of the contractor, simply confers upon the latter the privilege or power to compel the Collector to expedite or secure the collection of the tax, through one of the means it was his right and duty to employ, if found necessary, or at least to request of the Mayor and City Council authority to employ, whether the contractor requested it or not. We find nothing in the terms of this section, which makes it essential to a declaration in such an action to state that the suit is "for the use" of the contractor, or even that such use should be entered on the docket. It is to be brought "in the name of," that is by the Mayor and City Council, and is to be "on behalf" of the contractor, which means simply that it is to be prosecuted, in order that the tax may be collected and paid over to him as provided in the preceding sections. This seems to us the just construction of this section, and the privilege thereby conferred on the contractor was omitted from the Ordinance of 1874, solely because the latter provided a different mode by which he should be paid for his work, by the city. But apart from this, we are of opinion the action does not depend on this section of the Ordinances of 1869. In considering as we now are, the naked question whether or not the action lies, we can look only to the right of the legal plaintiff to maintain it. If the right of action is in him, it is wholly immaterial for whose use it may be brought, or who may be equitably entitled to the fruits of the judgment, for with that, the party sued has no concern. If the equitable plaintiff dies pending the suit, it does not abate, and his death is not the

subject of a plea in abatement *puis darrein continuance*, nor is there any necessity for suggesting his death and bringing in his representatives. The suit goes on as if he were still living, or the use had never been entered. The judgment is entered in the name of the legal plaintiff and it is nothing to the defendant, who may be entitled to the equitable interest. *State, use of Levy Court vs. Dorsey, et al.*, 3 *G. & J.*, 75; *Logan, et al. vs. State, use of Nesbitt's Adm'rs*, 39 *Md.*, 177. This leads us to the question, had the Mayor and City Council of Baltimore the right to bring this action? As to this we think there can be no doubt. The Act of 1870 conferred upon the city directly, the power to collect these taxes as other city taxes are collected. The Act of 1874 gave the power "to provide by ordinance" for collecting them in the same way, and the ordinance, No. 44, of that year, by section 10, directed the Collector to collect such tax bills as other city taxes are collected. But it is clear if these laws and ordinance had provided no remedy, or had given other remedies without expressly taking away the remedy by this action, the city would still have had the power to bring it. That was expressly decided in *Howard's Case*, 6 *H & J.*, 383, where an action of *assumpsit* was brought by the city to recover a paving tax imposed under the Act of 1797, ch. 54. That Act authorized the tax but gave no remedy for its collection, and the objection was that the action was improperly conceived, inasmuch as the Act of 1796, ch. 68, authorized the collection of all city taxes by distress or action of debt, and it was contended they could be recovered in no other way. But in answer to this, the Court said "where no particular remedy is given, the action of *assumpsit* will lie on the principle that where the *law* gives a claim to one against another, it raises an implied *assumpsit* on the legal obligation to pay," and if the tax were imposed by virtue of the Act of 1796, "it would make no difference, for the giving a remedy by distress or

action of debt is cumulative only and does not take away the action arising by implication on the legal obligation to pay a claim created by law." It can make no difference in the application of this principle, that by subsequent legislation the amount of the tax is regulated by the charge of the contractor for doing the work and incidental expenses. The tax is still levied by the city in pursuance of authority delegated by the State, and the obligation of the tax-payer thus created is to pay to the authority which imposes the tax. By paying the tax to the City Collector, or by discharging a judgment recovered in an action of *assumpsit* brought in the name of the city for its recovery, he is discharged whether the city pays it over to the contractor or not. For these reasons we think this objection cannot be sustained.

2nd. The next objection seeks to give a broader and deeper signification and effect to the Act of 1874. It is insisted that though the paving was done and the tax duly levied under the Act of 1870, yet inasmuch as that Act was repealed by that of 1874, without reservation of existing rights accrued and perfected under the former statute, the tax is stricken down and the right to recover it gone. For this proposition is cited the rule stated by TINDAL, C. J., which is repeated in all the text books, and generally received and accepted by the Courts, that "the effect of repealing a statute is to obliterate it as completely from the records of the parliament as if it had never passed, and it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted and concluded whilst it was an existing law." But can this rule be applied in all its rigor to the legislation we are now considering? The Constitution of the State (Art. 3, sec. 29) provides that, it shall be the duty of the General Assembly in amending any Article or section of the Code of Laws of this State to *enact the same as the said Article or section would read*

*when amended.''* This provision was doubtless intended to facilitate reference to the laws and future codifications of the same. By it whenever any amendment, no matter how slight, of any section of the existing Code is found necessary, which under the old system would be effected by a supplemental Act that would leave the original law in full force, it can only be made by re-enacting the whole of the original section with the addition which the new law makes. In obedience to this constitutional requirement a legislative practice has grown up of making enactments touching the sections of the Code in the form of "repeal and re-enactment," whether the purpose be to retain the old and add to it by way of amendment, or to change the section altogether by making new provisions in lieu thereof, and it was under this provision and in conformity with this practice that the laws in question were passed. By the Code of Public Local Laws, Art. 4, sec. 861, power was given to the city to pave any unpaved street, provided the assent in writing of the proprietors of a majority of the ground binding and fronting thereon was obtained, but that section omitted the power, which had long previously existed, of assessing the tax exclusively upon the owners of the adjacent property. The Act of 1870 "repealed and re-enacted," this section retaining its very words but adding the omitted power. The Act of 1874 among other sections relating to the same subject which it repeals and re-enacts with modifications, repeals the Act of 1870, and the section thereby repealed and re-enacted, and enacts in lieu thereof a section in which is still retained the power to pave, and assess the tax and collect the same, which existed under the law of 1870, and so far as this power is concerned it gives authority to provide for its exercise by general ordinance without the necessity of the passage of a special ordinance in each particular case, and such general ordinance was soon afterwards passed. So far therefore as the question we

are now considering is concerned, there exists no substantial difference between the power which this Act confers, and that which existed under the previous law. There is the same power to direct the paving to be done whenever the owners of a majority of the front feet binding on the street to be paved shall apply therefor, the same power to assess the cost of the work upon the adjacent property exclusively, and the same power to collect such assessment as other city taxes are collected. In view of these considerations we cannot yield assent to the proposition, that by the mere fact that the law of 1870 is by the Act of 1874 declared repealed, the first law is so far obliterated as that it no longer operates, and that all rights that may have accrued under it are stricken down and their enforcement defeated. The repealing and enacting part of the Act of 1874, take effect at the same instant of time, and the enacting part substantially re-enacts the provisions of the first statute. There is high authority for the position that where a repealing law contains a substantial re-enactment of the previous law, the operation of the latter continues uninterrupted. *Fullerton vs. Spring,* 3 *Wis.,* 667; *Alexander vs. The State,* 9 *Ind.,* 337; *Knoup vs. The Piqua Bank,* 1 *Ohio State Rep.,* 603. But if no authority were to be found in its support, the proposition is reasonable and just in itself, and we have no hesitation in applying it to such legislation as that now before us enacted under the constitutional provision to which we have referred. We find nothing in conflict with this doctrine in our decision in *Wade, et al. vs. Saint Mary's Industrial School,* 43 *Md.,* 178. In that case an injunction had been granted to restrain parties from proceeding to construct a road called Wilkins Avenue through the lands of the complainant. The proceedings to construct this road had been commenced and were being carried on under a public local law relating to roads in Baltimore County, and were authorized by no other statute. Before the case was

decided in this Court, that law was repealed by another Act which, as we said "introduced a *totally different* mode for the opening of roads in that county, from the one required and directed by the" preceding Act; and we said "in the repealing law there is no saving clause in favor of proceedings which were *in fieri* and incomplete under the" previous statute, "nor any re-enactment by which proceedings can be supplemented so as to render what had already been done complete and final," and "the consequence is that in this state of the road laws of that county, the appellants are without authority to proceed in the manner complained of in the bill, to construct the road in question," and the injunction was therefore sustained. In a case like that it is clear the repeal is unconditional and absolute, and the repealed statute has no longer any operation or effect, but such a case differs widely from this, and the language used in that opinion was very carefully guarded for the express purpose of leaving open the question now before us Without further protracting reasoning on this point, it follows from what we have said that the objection now under consideration must be overruled.

3rd. The plaintiff offered in evidence the proceedings for the opening and condemnation of that part of McCulloh street, on which the paving in question was subsequently done, including the ordinance for that purpose, approved May 27th, 1868. The defendant objected to the admissibility of these proceedings, first, because they did not show on their face, and were not followed up by proof on the part of the plaintiff, that the sixty days notice of the application for the passage of the ordinance had been given as required by Art. 4, sec. 838, of the Code of Public Local Laws. It is true this section of the law makes such notice essential to the validity of a condemnation ordinance, as was decided by this Court in the recent case of *The Mayor and City Council of Baltimore vs. The Grand Lodge of Odd Fellows*, 44 *Md.*, 436. In that case a bill

in equity was filed to restrain the enforcement of the ordinance, and the objection there held fatal was that the ordinance did not conform in substance to the notice given. There the ordinance was assailed directly in proceedings instituted for that purpose; here the question of its validity arises incidentally in an action to recover a paving tax. The proceedings to open and condemn a street are entirely distinct from the proceedings to pave it, and if, in this action, the validity of the condemnation ordinance can be assailed at all for any matter *dehors* the ordinance itself, we are all clearly of opinion the *onus* of proof is on the party raising the objection. It is just and reasonable that such burden should rest upon him, no matter how difficult the discharge of it may be, or how much the proof of a negative it may involve. The section of the Code referred to requires that notice of the application shall be published for at least sixty days in two of the daily newspapers of the city, but it does not, nor does any ordinance on the subject, so far as we are aware, require that such notice and its publication shall be recorded as part of the condemnation proceedings. A street may be and often is opened and condemned for many years, before any steps are taken to pave it. It is plain from what appears in this record, that the assessments of benefits and damages under the condemnation ordinance, had all been completed, paid and collected long before these paving proceedings were commenced. The record, in fact, shows that the defendant was paid his proportion of damages, for the opening of the street through his property, as early as the 7th of January, 1870, more than seven months before the application to pave it was made. The other objection to the admissibility in evidence of these proceedings has much less force. It is that the Commissioners gave by publication twenty-nine instead of thirty days previous notice of meeting, to execute their powers and perform their duties under the condemnation ordinance. This was a mere

irregularity which might have been availed of on an appeal from the proceedings under that ordinance, (*Page vs. Mayor and City Council of Baltimore,* 34 *Md.,* 558; *Hazlehurst vs. Mayor and City Council of Baltimore,* 37 *Md.,* 199,) but cannot be relied on in this action. Neither of these objections can therefore be sustained.

4th. The plaintiff also offered in evidence the paving application, and proved the signatures of the several parties thereto. The number of feet represented on the face of the application exceeded the requisite majority. This application was duly advertised, and no objection being made the City Commissioner with the approval of the Mayor accepted it and directed the necessary proceedings for the execution of the work. The paving was accordingly done, and now the defendant makes the objection, that it was incumbent on the plaintiff to prove, that each of the several applicants was the owner, (or the agent duly authorized to sign for the owner,) of the property so represented. In other words the objection goes to the extent, that if there are any number of applicants professedly constituting this majority, the City, in order to recover his proportion of the tax from any non-assenting owner, must exhibit the titles of all the applicants, and the defendant has nothing more to do than to sit by and get rid of the tax on him, if the title of any one necessary to make up the assenting majority, is not *affirmatively shown* to be such as the law requires to enable him to sign. This we think is an unreasonable exaction and not supported by any adjudged case. Whilst the law has wisely provided, that the paving shall not be done unless applied for by a majority in interest of those to be affected thereby, still some effect must be attributed to the affirmative determination of the Commissioner and Mayor on the application, especially when no objection is made after ample notice by publication has been given, so that any one interested may appear and resist, or object to the

application on the ground that a sufficient interest is not properly represented. Our judgment is that in such case the application when so approved, must be taken as *prima facie* evidence of the ownership and authority to sign, of the several parties signing the same. Though this point has not been expressly decided in any former case, we yet think it necessarily follows from what our predecessors have said in *Henderson's Case,* 8 *Md.,* 352, and in *Bouldin's Case,* 23 *Md.,* 369. But if the question were entirely new, we should have had no difficulty in settling it as we have. This leaves the defendant at full liberty to assail and controvert the ownership and authority of any one or all of the parties signing the application, so as to reduce the representation below the requisite majority. But, in our opinion, the proof in this case on that subject to which our attention has been specially directed, is not legally sufficient to warrant a finding that there was not a majority of feet properly represented by those who signed this application. It follows that these objections must be overruled.

5th. In *one* of his prayers the defendant insists, that to authorize a recovery in this action, it was necessary for the plaintiff to show that this paving was done in strict conformity with ordinance, No. 13, approved June 5th, 1858, and in *another* that there can be no recovery, because the City Commissioner in proceeding under the Act of 1870, and ordinance No. 78 of that year, had no authority to require the paving to be done in accordance with the ordinance of 1858. Without inquiring whether these two objections are consistent, we are of opinion that neither of them can be sustained. That part of the ordinance of 1858, which prescribed the dimensions of stones to be used in curbing and paving, had in some slight degree been altered by the ordinance of 1870, before the commencement of the paving proceedings now in question. In no other respect so far as affects this

case was the ordinance of 1858 changed. The proof shows that the cost of the stones required by the ordinance of 1870, would be slightly less than those required by that of 1858, but that the work was *actually done under the ordinance of* 1870, and accepted by the city. In the *bond* which the contractors gave to the city for the faithful execution of the work, it was stipulated the work should be done "in strict accordance with the *provisions* of ordinance No. 13, approved June 5th, 1858," without noticing (probably through inadvertence,) the modifications of those provisions made by the ordinance of 1870, and it is upon the terms of this clause in that bond, and *upon nothing else*, that both these objections rest. There is nothing to show that the proposals for paving were made in view of the requirements of the ordinance of 1858, and that for that reason a higher rate of taxation was imposed or the amount of the tax increased. On the contrary, we assume, from the terms of the advertisement for that purpose, that proposals were invited and made in view of the modification of the ordinance of 1858 made by that of 1870. We have, moreover, carefully examined all the ordinances then in force on this subject, and can find no provision in them which makes the giving and observance of such a bond essential to the validity of the tax. The taking of such a bond, under the ordinances on that subject, is a very proper precaution, in order to insure the doing of the work, and a departure from its terms allowed by the city, might be a very good defence for the sureties when sued thereon, but we do not see how such departure, *of itself*, can have the effect to make the tax invalid.

6th. The next ground of objection is, that at the time this work was done, the city had no power to include in the tax for *paving* the cost of grading the street, and assess that upon the owners of adjacent property. The Act of 1870 expressly confers the power *to pave* an unpaved street

and to assess the *expenses* thereof upon the owners of adjacent lots. The same power had been given by the Act of 1797, ch. 54, and had existed until the adoption of the Code. The ordinances to carry out this power prior to the Code, contained substantially the same provisions on this subject that are contained in the ordinance of 1870, and in all the numerous cases that have arisen involving the extent and construction of these powers, we are not aware that it has ever been contended that the cost of grading preparatory to paving was not properly included in the assessment of the paving tax. Though we are thus without the aid of any express adjudication upon the subject in this State, we have no difficulty whatever in deciding that the power has been properly interpreted by these ordinances. It is obvious that paving a street which has never before been paved involves the necessity of first grading it in order that the pavement may be properly laid, and so the Courts have held wherever the question has been raised. The authorities are collected in *Dillon on Municipal Corporations, sec.* 636, where it is said: "The power *to pave streets* includes the power to furnish and do all that is necessary, usual, or fit for paving; and on this ground it has been held that the expense of *grading* a street preparatory to paving is incident to paving, and the expense properly included in the assessment. And in Pennsylvania it has been decided that the power to pave includes the power to furnish, or require the party at whose expense it is done, to pay for *curbstones.* And so as to *trimming* and *guttering;* these were held to be included in the power to *macadamize.*" A further objection under this head is that the cost of grading the *sidewalks* could not be legally included in this tax, because that was required to be done by each property owner himself. But in answer to this it is only necessary to say that we find in the record no proof that any grading was done on that part of the street embraced by the sidewalks other than

was necessary for the proper laying and protection of the curbing and guttering included in the work of paving.

7th. It is also said the assessment embraces other charges not authorized by law, and especially a commission to the City Collector for collecting the tax. Besides the cost of grading, curbing, and paving proper, it is shown there was included in this assessment charges for establishing the grade, for advertising and for surveying, amounting in all to a small sum. That these latter charges come clearly within "the expenses," which the law allows, we think there can be no reasonable doubt. The theory of the laws which impose this exclusive taxation on adjacent owners, is that the work is for their benefit, and that they derive such advantages from it in the enhanced value of their property, over and above what is conferred upon the public at large, that it is just they should pay all the cost thereof, and that no part of the burden should be borne by others. That being the purpose and intent of such enactments, we think it is no extension of the term "expenses" as used in the Act of 1870, to construe it as including a reasonable commission for collecting the tax, especially when we consider that it has been the practice in this State to include such commissions in general tax laws and that collectors are paid in this way.

8th. The remaining objection is that the defendant cannot be held liable for any part of the tax shown to have been assessed against Mrs. Mary Dashiell. It appears that Mrs. Dashiell, the mother of the defendant, in her life-time owned certain lots binding on this street, and that she died in 1869, leaving a will by which she devised them in fee to the defendant. In the assessment warrant the proportionate tax for these lots, is erroneously assessed to Mrs. Dashiell, instead of the defendant who at the time the paving proceedings were commenced, as well as when the assessment was made, was confessedly the owner of them. Whatever difficulty this mistake might have occa-

sioned in a proceeding to collect the tax by process of distraint, it is, in our judgment, entirely competent for the plaintiff in this action of *assumpsit* to show that the defendant was in fact the owner of the lots and therefore liable to pay the tax assessed therefor.

We have thus considered all the numerous defences raised in the Court below, and finding in none of them any ground of reversal the judgment must be affirmed.

*Judgment affirmed.*

(Decided 1st March, 1877.)